COMMONWEALTH of Pennsylvania

v.

**Ernesto SANES, Appellant.**

Superior Court of Pennsylvania.

Submitted April 14, 2008.

Filed Aug. 4, 2008.

**370**

Eric J. Taylor, Reading, for appellant.

Stuart B. Suss, Office of the Attorney General, for Com., appellee.

* Retired Senior Judge assigned to the Superior Court.

1.  35 P.S. § 780–113(a)(16), 35 P.S. § 780–113(a)(30), & 18 Pa.C.S.A. § 6105(a)(1), respectively.

BEFORE: FORD ELLIOTT, P.J., SHOGAN and COLVILLE,* JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 Ernesto Sanes appeals from the judgment of sentence of July 2, 2007, following his conviction of one count each of possession of a controlled substance, possession with intent to deliver a controlled substance, and persons not to possess, use, manufacture, control, sell, or transfer firearms.[1]  In this appeal, we are asked to decide whether or not appellant was in constructive possession of the firearms; and if so, whether or not they were in "close proximity" to the contraband such that the mandatory sentencing provision of Section 9712.1 of the Sentencing Code applied.[2]  This case raises a question of first impression in this Commonwealth; to-wit, what constitutes "close proximity" for purposes of the mandatory sentencing statute.  For the following reasons, we determine that appellant did constructively possess the firearms at issue; and that, while the phrase "close proximity" does not easily lend itself to precise definition, at least one of the firearms was indeed in close proximity to the illegal narcotics recovered from appellant's bedroom.  Therefore, the trial court did not err in applying the statute, and we will affirm appellant's judgment of sentence.

¶ 2 The facts of this case have been aptly summarized by the trial court as follows:

On July 27, 2006, Investigator Leporace of the Reading Police Vice Division and other members of the Reading Police Department executed a search warrant

2.  42 Pa.C.S.A. § 9712.1 ("Sentences for certain drug offenses committed with firearms"), effective January 31, 2005.

of 1031 Patton Avenue, Reading, Berks County, Pennsylvania. The warrant listed the Defendant, Ernesto Sanes, and his girlfriend, Catherine Perez, in a search targeting controlled substances and related contraband. During the search, the police found mail addressed to both the Defendant and Perez at 1031 Patton Avenue. Upstairs, the police found two bedrooms, a storage room, and a bathroom. In the first bedroom, Investigator Leporace observed the Defendant and his girlfriend in bed together in their undergarments, as well as a bulk quantity of cocaine in a plastic bag on top of the bedroom dresser. Investigator Leporace also saw most of the Defendant's clothes in this bedroom. In the other bedroom, he observed a small child and an infant, along with a crib and a small bed, small clothing, and toys. After allowing the Defendant and Perez to dress, directing them to the living room, and individually reading them their Miranda [3] rights, Investigator Leporace asked the Defendant if any drugs, weapons, money, or drug paraphernalia were in the house. The Defendant responded that there were two guns, but that one was legal because it was registered to Perez. He led Investigator Leporace to the gun registered to Perez, a fully-loaded nine-millimeter handgun, inside a box in the closet of the room where he and Perez slept. At the Defendant's direction, Investigator Leporace located the other gun, an unloaded and unregistered .380 revolver, in the pocket of an adult-sized leather jacket hanging in the children's bedroom closet.[4] The Defendant admitted to selling the cocaine. The police found one other person in the residence—the Defendant's father, on a visit from abroad. The police found no indications that the Defendant's father lived at the residence.

At trial, Investigator Leporace testified that firearms are tools of the drug trade and that he expects to find firearms when executing a drug-related warrant.

Trial court opinion, 12/18/07 at 2–3.

¶ 3 On April 27, 2007, following a bench trial before the Honorable Thomas G. Parisi, appellant was found guilty of all three charges. On July 2, 2007, appellant appeared for sentencing. After hearing further testimony from Criminal Investigator Pasquale Leporace ("Investigator Leporace") and argument from the parties, Judge Parisi determined that appellant constructively possessed both firearms, and that both firearms were in close proximity to the drugs as required for the application of the mandatory sentencing provision of Section 9712.1. (Notes of testimony, 7/2/07 at 21.) At Count 2, possession with intent to deliver a controlled substance, the trial court imposed the mandatory sentence of five to ten years' imprisonment. At Count 3, persons not to possess firearms, the trial court imposed the statutory maximum sentence of five to ten years.[5] The sentences were run concurrently and Count 1, possession, merged

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. The police found ammunition for the .38 special revolver in a hallway closet on the second floor. (Notes of testimony, 4/27/07 at 26–28.) Additional ammunition for the .9mm handgun was found in the kitchen of the residence. (*Id.* at 27.)

5. It was stipulated prior to trial that appellant had a prior felony conviction prohibiting him from possessing, using, etc., a firearm pursuant to 18 Pa.C.S.A. § 6105(a)(1). The trial court found as an aggravating circumstance that the firearms offense occurred contemporaneously with drug trafficking. (Notes of testimony, 7/2/07 at 22.) We also note that although appellant was charged with only one count under Section 6105, the Common-

for sentencing purposes, for an aggregate sentence of five to ten years.

¶ 4 Timely notice of appeal was filed July 24, 2007. On August 21, 2007, the trial court directed appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b) within 21 days; appellant complied and filed a timely Rule 1925(b) statement on September 5, 2007, raising the identical issues presented instantly. On December 18, 2007, the trial court filed a Rule 1925(a) opinion.

¶ 5 Appellant has raised the following issues for this court's review:

A. Whether the evidence was insufficient to establish beyond a reasonable doubt that appellant was guilty of count 3, persons not to possess, use, manufacture, control, sell or transfer firearms, where the Commonwealth failed to establish that appellant had actual or constructive possession of either of the firearms in question?

B. Whether the sentencing court erred in finding that the mandatory sentence of five years under 42 Pa. C.S.A. § 9712.1 was applicable for count 2, possession with intent to deliver a controlled substance, where the Commonwealth did not prove that either of the firearms were in appellant's or his accomplice's possession or control and the Commonwealth did not prove that either of the firearms were within appellant's or his accomplice's reach or in close proximity to the controlled substance?

Appellant's brief at 4.

■ ¶ 6 Before turning to the Section 9712.1 issue, we address appellant's contention that the Commonwealth failed to prove he was in possession of either firearm. Initially, we note our standard of review:

> The standard for reviewing the sufficiency of evidence on appeal is well-settled.
>
> > When reviewing a sufficiency of the evidence claim, an appellate court must view all the evidence and reasonable inferences therefrom in a light most favorable to the Commonwealth as verdict winner and must determine whether the evidence was such as to enable a fact finder to find that all of the elements of the offense[ ] were established beyond a reasonable doubt.
>
> *Commonwealth v. Castelhun,* 889 A.2d 1228, 1232 (Pa.Super.2005) (internal citations omitted). Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions they may not be disturbed. *Commonwealth v. Hartle,* 894 A.2d 800, 803 (Pa.Super.2006). Lastly, the finder of fact may believe all, some or none of a witness's testimony. *Castelhun,* 889 A.2d at 1232.

*Commonwealth v. Holley,* 945 A.2d 241, 246–247 (Pa.Super.2008).

■ ¶ 7 As stated above, it was stipulated that appellant was convicted of a qualifying offense enumerated in Subsection (b) of the statute; therefore, the only issue is whether or not the Commonwealth proved beyond a reasonable doubt that appellant was in possession or control of one or both of the firearms in question. If so, then the Commonwealth satisfied its

---

wealth did not specify anywhere in the charging documents which firearm it was alleging appellant possessed. As stated *supra,* the trial court found that appellant was in possession of both firearms.

burden under Section 6105(a)(1).[6] As there was no evidence that appellant was in actual possession of either firearm, the Commonwealth had to prove constructive possession.

'When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession....' *Commonwealth v. Haskins,* 450 Pa.Super. 540, 677 A.2d 328, 330 (1996), *appeal denied,* 547 Pa. 751, 692 A.2d 563 (1997). 'Constructive possession is the ability to exercise conscious control or dominion over the illegal substance and the intent to exercise that control.' *Commonwealth v. Kirkland,* 831 A.2d 607, 610 (Pa.Super.2003), *appeal denied,* 577 Pa. 712, 847 A.2d 1280 (2004) (citing *Commonwealth v. Macolino,* 503 Pa. 201, 469 A.2d 132 (1983)). '[T]wo actors may have joint control and equal access and thus both may constructively possess the contraband.' *Haskins, supra* at 330. 'The intent to exercise conscious dominion can be inferred from the totality of the circumstances.' *Kirkland, supra* at 610.

*Commonwealth v. Jones,* 874 A.2d 108, 121 (Pa.Super.2005).

¶ 8 Instantly, appellant knew the precise location of both firearms, and showed police where they were. The firearms were not in plain view; the .9mm handgun was concealed in a box in the bedroom closet, and the .38 special revolver was inside a jacket in the children's bedroom. (Notes of testimony, 4/27/07 at 24.) Inspector Leporace testified that appellant pointed out the specific box containing the .9mm, as well as the particular leather jacket in which the .38 was located. *(Id.)* In addition, appellant knew the registration status of the firearms, informing police that the .9mm was "legal" because it was registered in the name of his girlfriend, Catherine Perez ("Perez"). *(Id.* at 23–24.) By implication, the .38 revolver was not "legal" and, in fact, the police could not find ownership records for the .38. *(Id.* at 27.)

¶ 9 Appellant does not dispute that he resided in the apartment with Perez. As the trial court states, there was mail addressed to appellant at that location, photographs of appellant throughout the apartment, and appellant's clothing was found in the second floor bedroom. *(Id.* at 28–29.) Examining the totality of the circumstances, we determine there was sufficient evidence to prove that appellant had both the ability to exercise conscious control or dominion over the firearms and the intent to exercise that control. While appellant theorizes that perhaps his father, visiting from overseas, owned the .38 special and jacket (appellant's brief at 14), there was no evidence of that at trial, and such an argument misconstrues our standard of review. Appellant also contends that Perez owned the .9mm and it was registered to her *(id.);* however, appellant never told Investigator Leporace that Perez owned the gun, only that it was "legal" because it was registered in her name. (Notes of testimony, 4/27/07 at 41–42.) Nor did Perez admit ownership of the gun, Investigator Leporace testifying she "wasn't very talkative." *(Id.* at 43.) As

---

**6.** Section 6105 of the Crimes Code, persons not to possess, use, manufacture, control, sell or transfer firearms, provides, in relevant part:

   (a) **Offense defined.—**
   (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

   18 Pa.C.S.A. § 6105(a)(1).

stated above, two or more individuals can jointly possess the same contraband. *Jones, supra.*

¶ 10 Appellant is correct that mere presence at the scene is insufficient to prove constructive possession of contraband. *Commonwealth v. Valette,* 531 Pa. 384, 390–391, 613 A.2d 548, 551 (1992); *Commonwealth v. Keblitis,* 500 Pa. 321, 324, 456 A.2d 149, 151 (1983). However, in this case, appellant lived in the residence, knew exactly where the firearms were, and led police to them. The evidence was sufficient to support appellant's conviction under Section 6105(a)(1).

■ ¶ 11 Having determined that the Commonwealth established appellant's constructive possession of the two firearms, we turn to appellant's second issue, in which he claims that the Commonwealth failed to prove, by a preponderance of the evidence, that Section 9712.1 applied; *i.e.,* that one or both of the firearms was in "close proximity" to the controlled substance. That section provides, in relevant part:

**§ 9712.1. Sentences for certain drug offenses committed with firearms**

**(a) Mandatory sentence.**—Any person who is convicted of a violation of section 13(a)(30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, when at the time of the offense the person or the person's accomplice is in physical possession or control of a firearm, whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or in close proximity to the controlled substance, shall likewise be sentenced to a min-imum sentence of at least five years of total confinement.

42 Pa.C.S.A. § 9712.1(a) (footnote omitted).[7]

¶ 12 As discussed above, there was no evidence presented that, at the time of the offense, appellant was in actual physical possession or control of a firearm. In addition, there was no evidence that either firearm was "within reach." The .9mm in the closet of the bedroom where appellant and Perez were sleeping was concealed inside a box on a shelf. (Notes of testimony, 4/27/07 at 24; 7/2/07 at 5–6.) The .38 was in an adjacent bedroom, inside the pocket of a black leather jacket hanging in the closet. (Notes of testimony, 7/2/07 at 6–7.) Therefore, for Section 9712.1 to apply, the Commonwealth had to demonstrate that one or both of the firearms was in "close proximity" to the controlled substance; and, in fact, this is the theory on which the Commonwealth proceeded.

¶ 13 As already stated, the issue is one of first impression in Pennsylvania; "close proximity" is not defined in the statute, and there is no decisional precedent interpreting that phrase in regards to Section 9712.1. There is, however, case law interpreting identical language with respect to Pennsylvania's Forfeiture Act.[8] The Forfeiture Act provides that where currency is found in close proximity to controlled substances which are possessed unlawfully, there is a rebuttable presumption that such currency is proceeds derived from selling a controlled substance in violation of the Controlled Substance Act. *Commonwealth v. Giffin,* 407 Pa.Super. 15, 595 A.2d 101, 104 (1991), citing 42 Pa.C.S.A. § 6801(a)(6)(ii).

**7.** Perez was not charged in connection with this case. (Notes of testimony, 4/27/07 at 35.)

**8.** Controlled Substances Forfeiture Act, 42 Pa.C.S.A. § 6801.

¶ 14 In *Giffin,* the police seized bags of marijuana found in the defendant's kitchen, as well as drug paraphernalia consisting of a glass bong from underneath her couch. *Id.* at 105. At the time of her arrest, an officer observed the defendant attempting to hide a roll of cash totaling $850 in her couch, near the glass bong. *Id.* The officers also recovered the additional sum of $411 from a jacket lying on the defendant's coffee table. *Id.*

¶ 15 This court held that as the currency was found in the same room as the glass bong, and in close proximity to the marijuana packaged for sale and stored in the defendant's kitchen, the money was presumed to be derived from the sale of controlled substances. *Id.,* citing 42 Pa.C.S.A. § 6801(a)(6)(i)(A).[9] In *Giffin,* then, examining identical language elsewhere in the Sentencing Code, this court held that currency found in the living room was in "close proximity" to controlled substances found in the kitchen, for purposes of the Forfeiture Act. *Compare Commonwealth v. Heater,* 899 A.2d 1126 (Pa.Super.2006), *appeal denied,* 592 Pa. 779, 926 A.2d 973 (2007) (Commonwealth sustained its initial burden of establishing a nexus between the money seized and a violation of the Controlled Substance Act where, *inter alia,* bags of marijuana and drug paraphernalia were recovered from the defendant's bedroom and second-floor closet, and $38,310 in cash was found in a safe in

the defendant's kitchen, commingled with some pre-recorded bills from controlled drug buys; holding that the evidence supported forfeiture of all monies seized from the residence).

¶ 16 The Commonwealth has also directed our attention to several federal cases examining Section 2D1.1(b)(1) of the federal sentencing guidelines, which provides for an upward adjustment in a defendant's sentence where the defendant possessed a firearm or other dangerous weapon during the commission of the offense. USSG, § 2D1.1, 18 U.S.C.A. The guidelines state that the enhancement should be applied where the weapon is "present," unless it is clearly improbable that the weapon was connected with the offense.[10] The federal courts have found that the adjustment applies where firearms are located in "close proximity" to narcotics the defendant was in the business of distributing. *United States v. Green,* 889 F.2d 187, 189 (8th Cir.1989), citing *United States v. Jones,* 875 F.2d 674, 676 (8th Cir.1989), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

¶ 17 In *Green,* law enforcement officers executing a search warrant recovered approximately 69 grams of cocaine base packaged in 62 individual plastic bags, most of which was found in one room of Green's apartment. *Green, supra* at 187.

9. The *Giffin* court went on to hold that the defendant presented sufficient evidence to rebut the presumption raised by the discovery of the money in close proximity to the illegal controlled substance; the lower court found credible the defendant's evidence that the funds seized were derived from legitimate sources. *Id.* at 106. Therefore, the money was not subject to forfeiture.

10. We acknowledge that following the United States Supreme Court's decisions in *Apprendi, Blakely,* and *Booker,* the federal sentencing guidelines have been recognized as unconsti-

tutional. *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *See United States v. Harris,* 325 F.Supp.2d 562, 564 (W.D.Pa. 2004) ("the federal sentencing guidelines are an unseverable and unconstitutional whole"). We discuss the federal cases interpreting Section 2D1.1(b)(1) merely by way of factual comparison, since there is no binding precedent on this issue in Pennsylvania.

In Green's bedroom, a different room from the one where the majority of the cocaine was found, officers discovered an unloaded single-shot .22 caliber handgun in plain view inside the headboard of Green's bed. *Id.* The court in *Green* determined the district court did not err in applying the sentencing enhancement, where Green was in possession of the firearm in the "same place" where she was conducting drug transactions and the presence of the firearm created an additional hazard. *Id.* at 189.

¶ 18 In *United States v. Williams*, 10 F.3d 590 (8th Cir.1993), officers executing a search warrant found cocaine and drug paraphernalia on the defendant's kitchen table. *Id.* at 592. When asked if there were any guns in his apartment, the defendant informed officers that there was a firearm located inside a black briefcase on the second floor. *Id.* at 592–593. The officers found a black briefcase containing a loaded .9mm semi-automatic firearm and $2,500 in cash on the second floor. *Id.* at 593.

¶ 19 In holding that the district court did not err in granting a two-point sentencing enhancement for possession of a firearm during the commission of the offense pursuant to Section 2D1.1(b)(1) of the federal guidelines, the *Williams* court examined the temporal and geographical proximity between the firearm and the cocaine, and found that the distance between Williams and the firearm was "minimal." *Id.* at 596. Citing *Green, supra*, the court in *Williams* specifically found that the loaded firearm on the second floor was located in "close proximity" to the cocaine in the kitchen; and therefore, a sufficient nexus existed between the cocaine and the firearm to support the enhancement. *Id.*, citing also *United States v. Baker*, 907 F.2d 53, 55 (8th Cir.1990) (increase in base offense level where weapon found in bedroom and cocaine found in bathroom).

¶ 20 Turning now to the facts of the case *sub judice*, Investigator Leporace testified that the cocaine was found in a sandwich baggie on top of the dresser in the bedroom. (Notes of testimony, 7/2/07 at 4.) The closet where the loaded .9mm handgun was located was approximately 6–8 feet from the dresser. (*Id.* at 5.) We determine, as a matter of law, that this satisfies Section 9712.1's requirement that the firearm be in "close proximity" to the controlled substance. Although the firearm was contained in a box on a shelf in the closet, it was loaded and readily accessible to appellant. Our decision today also comports with the General Assembly's intent in enacting Section 9712.1, which was to provide a deterrent for those who are dealing in drugs and using firearms. (HB 447, Legislative Journal—Senate, November 19, 2004 at 2386.) As Senator Piccola remarked:

> It is a severe problem particularly in the cities of the Commonwealth, and it will act as a deterrent for those who deal in drugs and use firearms. It does not, and I repeat this, it does not provide for the mandatory minimum if the individual is only possessing drugs. It requires that they be dealing in drugs and in possession of a firearm before the mandatory minimum would apply.

*Id.*

¶ 21 The trial court found that both firearms, including the unloaded .38 special revolver inside the black leather jacket hanging in the closet of the children's bedroom adjacent to the bedroom where the cocaine was found, were in close proximity to the controlled substance for purposes of Section 9712.1. (Notes of testimony, 7/2/07 at 21.) However, as the Commonwealth notes, this court need not determine whether the second firearm in the

children's bedroom was likewise in close proximity to the cocaine. (Commonwealth's brief at 11 n. 2). Any discussion of the issue would be *dicta,* since we have already concluded that the location of the first firearm, 6–8 feet away, satisfied the statute.

¶ 22 Having determined that appellant constructively possessed the firearms, and that the .9mm handgun located in the bedroom closet approximately 6–8 feet from the controlled substance was in "close proximity" to the controlled substance so that the trial court did not err in applying Section 9712.1 to appellant's sentence, we will affirm the judgment of sentence.

¶ 23 Judgment of sentence affirmed.