**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Antonio GUTIERREZ, Appellee**

**Commonwealth of Pennsylvania, Appellee**

v.

**Antonio Gutierrez, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 20, 2009.

Filed March 30, 2009.

Jonathan H. Kurland, Assistant District Attorney, Reading, for Commonwealth.

Eric J. Taylor, Reading, for Gutierrez.

BEFORE: BOWES, SHOGAN and KELLY, JJ.

OPINION BY BOWES, J.:

¶ 1 Antonio Gutierrez and the Commonwealth have both filed appeals from the judgment of sentence imposed in this case. The Commonwealth complains about the sentencing court's failure to impose a mandatory minimum sentence that it contends is applicable herein. Gutierrez, who we will refer to as Appellant, assails the adequacy of the warrant utilized to search his residence and the sufficiency of the evidence supporting his conviction for possession of a prohibited offensive weapon. We reject the allegations of error raised by Appellant, but conclude that the Commonwealth's position is meritorious. We vacate the judgment of sentence and remand for a new sentencing hearing.

¶ 2 The record establishes the following. On January 2, 2007, police secured a warrant to search 657 Clinton Street, Reading, and Appellant's person for drugs, proof of residency at that location, and other evidence of drug-related activities. The affiant was Reading Police Officer Jose A. Colon, who had been assigned to the Vice and Narcotics Section of the Reading Police Department for approximately twelve years. Officer Colon's affidavit of probable cause indicated that he had conducted an investigation of drug-related activities at 657 Clinton Street with the assistance of a confidential source who had been given the designation of Confidential Source Number 818 ("CS") by the Reading Police Department. Officer Colon further attested that CS was then providing information to that department, and

> The CS information provided has proven to be accurate and correct. The information provided has included the names and addresses of area drug dealers, the types of drugs [they are] dealing, man-

ner in which [they are] packaged and a considerable amount of intelligence information. All of the information has been independently verified through the use of various investigative techniques. The CS information has led to several Federal indictments, State and Federal search warrants and to the arrest and conviction of well over 25 persons for the distribution of mostly crack cocaine. One of the more recent was based on information supplied by the CS which led to a search warrant, arrest and conviction of Shelly Smith–Greene for Poss/ PWI cocaine of more th[a]n one ounce of crack cocaine.

> Furthermore, the CS has been a member of the drug culture in the City of Reading PA and has managed to gain the trust and confidence of area drug dealers and other criminal elements. The CS has become familiar with those persons and their operations. The CS has been exposed to the sight of numerous controlled substances, including cocaine and has become knowledgeable of what these substances look like, how they are packaged for street sales, average street prices and other details involved in the illegal sales of controlled substances.

Affidavit of Probable Cause, 1/2/07, at 3. Within the forty-eight-hour period preceding January 2, 2007, the CS purchased crack cocaine pursuant to a controlled buy at 657 Clinton Street. After the purchase, the CS informed Officer Colon that he had purchased the drugs from Appellant. The CS gave Officer Colon the drugs, and Officer Colon field tested them. They tested positively as cocaine. Officer Colon also searched the files of the Reading Police Department and "located suspect Antonio Gutierrez, [J]r., listed address as 657 Clinton St., Reading[.]" *Id.* at 4.

¶ 3 After securing the warrant, Officer Colon, with the assistance of other officers, executed it that same day. Police knocked and announced their presence and purpose, and Appellant answered the door and allowed them to enter the residence. Police discovered a plastic sandwich bag containing eighteen smaller plastic packets of cocaine and two other plastic sandwich bags containing bulk cocaine hidden in Appellant's buttocks. In Appellant's pants pockets, there were keys to the house and approximately $200 in cash.

¶ 4 On top of the refrigerator in the kitchen, police found a plate with cocaine, materials associated with cocaine distribution, and a Talon .380 caliber handgun with a magazine containing eight rounds of ammunition. A box of twelve gauge shotgun shells also was located in the kitchen. In the living room, there was a bag of cocaine, two bags of marijuana, and a Winchester twelve gauge shotgun, which had been sawed off and hidden behind the stereo system. Police also found various letters, bills and other documents addressed to Appellant at 657 Clinton Street, Reading.

¶ 5 Appellant was immediately arrested and charged with one count of possession of a controlled substance (cocaine and marijuana), one count of possession of a controlled substance (cocaine) with intent to deliver, and possession of a prohibited offensive weapon with respect to the sawed-off shotgun. The jury returned a guilty verdict on the three charges before it. Since this case pertained to controlled substances, the issue of the amount of drugs possessed by Appellant became pertinent to certain mandatory minimum sentences applicable under The Controlled Substance, Drug, Device and Cosmetic Act. Upon questioning, the jury informed the court that its verdict had been unanimous only with respect to Appellant's possession

of the drugs found on his person and that it had not unanimously concluded that Appellant possessed the cocaine found in the kitchen or the cocaine and marijuana located in the living room.

¶ 6 The case proceeded to sentencing on January 23, 2008. Having previously supplied Appellant with notice of its intent to do so, the Commonwealth invoked the mandatory minimum sentencing provision enacted at 42 Pa.C.S. § 9712.1, which provides for a five-year minimum sentence relating to a defendant's conviction of drug charges and the possession of firearms. The sentencing court decided that the Commonwealth had not produced sufficient evidence to support application of the mandatory minimum sentence. It did impose a mandatory minimum sentence relating to the weight of the seized drugs.

¶ 7 Appellant subsequently filed a motion for reconsideration, arguing that the court should not have included the weight of the cocaine found on the refrigerator and in the living room for sentencing purposes. Appellant's sentence was vacated, and on April 2, 2008, a new sentencing hearing was conducted. The court accepted Appellant's position regarding the weight of drugs that he possessed, again refused to apply the mandatory minimum sentencing provision set forth at section 9712.1, and imposed an aggregate sentence of fourteen months to sixty months imprisonment followed by five years probation.

¶ 8 The Commonwealth filed the appeal at 710 MDA 2008, and Appellant filed the appeal at 806 MDA 2008. They were consolidated for our consideration. We will first address Appellant's issues since if he prevails with respect to his request for suppression of all the evidence seized herein, the sentencing issue raised by the Commonwealth would be rendered moot. As noted, Appellant assails the sufficiency of

the affidavit of probable cause supporting the search warrant issued in this case.

¶ 9 In determining whether an affidavit supporting the issuance of a search warrant established probable cause for the search, the "totality of the circumstances" approach as set forth by the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), is utilized. *Commonwealth v. Torres,* 564 Pa. 86, 764 A.2d 532, 537 (2001). The same standard applies to an analysis conducted under the Pennsylvania Constitution. *Id.; Commonwealth v. Gray,* 509 Pa. 476, 503 A.2d 921 (1986). If the warrant is based upon an anonymous source or a confidential informant, the warrant must support the reliability of the unnamed source or informant with sufficient facts. *Torres, supra.*

Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in *Gates,* the task of an issuing authority is "simply to make a practical, commonsense decision whether, given all of the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Commonwealth v. Gray,* 509 Pa. 476, 484, 503 A.2d 921, 925 (1985) (quoting *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332). Thus, the totality of the circumstances test "permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip . . . ." *Gates,* 462 U.S. at 234, 103 S.Ct. at 2330. *Id.* at 537. An affidavit of probable cause to support a search warrant does "not require a *prima facie* showing of criminal activity" on the part of the occupants of the premises to be searched. *Common-*

*wealth v. Wallace,* 953 A.2d 1259, 1261 (Pa.Super.2008). "Rather, a determination of probable cause requires only that the totality of the circumstances demonstrates 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Commonwealth v. Brown,* 924 A.2d 1283, 1286 (Pa.Super.2007) (quoting *Torres, supra* at 537 and *Gates, supra* at 238–39, 103 S.Ct. 2317).

¶ 10 The suppression court does not conduct a *de novo* review of the issuing authority's determination that probable cause existed for issuance of a warrant; instead, the suppression court's function is to ensure that the issuing authority's probable cause determination had a "substantial basis." *Commonwealth v. Coleman,* 574 Pa. 261, 830 A.2d 554, 560 (2003); *Torres, supra; Wallace, supra.* In turn, when we review the suppression court, we must ascertain if the record supports that court's factual findings. *Wallace, supra.* If so, we must affirm. *Id.*

¶ 11 In this case, Appellant challenges the sufficiency of the affidavit of probable cause solely on the basis that the reliability of the confidential source utilized in this case was not adduced in the affidavit. We cannot agree. The reliability of the CS was supported by Officer Colon's indication that the CS's input had led to the "arrest and conviction" of in excess of twenty-five other persons and his identification by name of one person convicted with the aid of the CS. Affidavit of Probable Cause, 1/2/07, at 3. Contrary to Appellant's position on appeal, this verbiage, standing alone, was sufficient to establish the CS's reliability pursuant to our decision in *Commonwealth v. Dukeman,* 917 A.2d 338, 341–342 (Pa.Super.2007), where we stated:

When information essential to a finding of probable cause is garnered from the use of confidential informants, the issu-

ing authority determines the reliability of the informant's information from the facts supplied by the police official. *See Commonwealth v. Gindlesperger,* 706 A.2d 1216, 1225 (Pa.Super.1997), *affirmed,* 560 Pa. 222, 743 A.2d 898 (1999), *cert. denied,* 533 U.S. 915, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001). The determination of reliability does not hinge on disclosed records "regarding the track record of the informant." Furthermore, the affidavit need not "contain the names, dates, or other information concerning prior arrests or convictions." *Id.,* at 1226. The affidavit must, however, at the very least, contain an averment stating the "customary" phrase that the informant has provided information which " 'has in the past resulted in' arrests or convictions." *Id.*

¶ 12 Moreover, in this case, the affidavit stated the following:

15—The confidential Police informant (listed in paragraph # 14) stated that within the past 48 hours of January 01st, 2007, CS responded to 657 Clinton St., City of Reading, Berks County, Pa. Upon arriving at address CS met with suspect Antonio Gutierrez, Jr. (listed on page 1). CS and Gutierrez, Jr., had [a] drug related conversation and transaction regarding the purchase of crack cocaine. C[S] handed suspect Gutierrez an amount of U.S. Currency (serial number EA55977639C). In exchange suspect Gutierrez handed C[S] # 818 small purple transparent plastic bags containing suspected cocaine.

16—That on Tuesday, January 02, 2007, Criminal Investigator Edward Heim searched Reading Police Police Dept. files (RMS) and located suspect Antonio Gutierrez, [J]r., listed address as 657 Clinton St., Reading, Berks County, Pa.

17—That on Tuesday, January 02, 2007, C.I. Jose A. Colon performed a prelimi-

nary drug test (valtox test) to small portion of suspected cocaine and observed a positive reaction for cocaine. The cocaine was packaged and marked to be sent to Penna. State Police lab for further chemical analysis.

Affidavit of Probable Cause, 1/2/07, at 4. Appellant suggests that this language does not establish that a controlled buy was conducted and does not support a finding that police actually observed the CS enter 657 Clinton Street prior to the drug purchase. Again, we disagree.

¶ 13 As noted above, an affidavit of probable cause must be read in a common sense and practical fashion. The affidavit herein specifically set forth the serial number of the currency used by the CS to purchase the crack cocaine from Appellant and then indicated that the CS gave his drug purchase to Officer Colon, who conducted a field test on it. These two events are part of the established sequence associated with a controlled buy and the reasonable inference created is that a controlled buy was conducted. Pursuant to standard operating procedure during a controlled buy, Officer Colon would have observed the CS enter 657 Clinton Street with marked currency and return with drugs and without the currency. This conclusion is supported by the fact that Officer Colon stated he was "fully aware of the circumstances of this case and [was] personally involved in the investigation of the facts detailed in their affidavit." *Id.* at 13.

¶ 14 The conduct of a controlled buy at 657 Clinton Street further bolstered the reliability of the information supplied by the CS that Appellant was dealing drugs from that location. Thus, the affidavit established a fair probability that drugs would be located in 657 Clinton Street and on Appellant and was sufficient to support issuance of a search warrant for evidence

of Appellant's residence therein, drugs, and drug-related items.

**¶ 15** Next, we address Appellant's position that the evidence was insufficient to support the jury's conclusion that he was in constructive possession of the shotgun located behind the stereo in the residence.

In determining whether there was sufficient evidentiary support for a jury's finding to this effect, the reviewing court inquires whether the proofs, considered in the light most favorable to the Commonwealth as verdict winner, are sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt. *See Commonwealth v. Crews,* 436 Pa. 346, 348, 260 A.2d 771, 771–72 (1970). The court bears in mind that: the Commonwealth may sustain its burden by means of wholly circumstantial evidence; the entire trial record should be evaluated and all evidence received considered, whether or not the trial court's rulings thereon were correct; and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence. *See Commonwealth v. Cousar,* 593 Pa. 204, 217, 928 A.2d 1025, 1032–33 (2007); *Commonwealth v. Harper,* 485 Pa. 572, 576–77, 403 A.2d 536, 538–39 (1979).

*Commonwealth v. Diggs,* 597 Pa. 28, 949 A.2d 873, 877 (2008).

**¶ 16** In this case, Appellant was charged with possession of a prohibited offensive weapon pursuant to 18 Pa.C.S. § 908(a) ("A person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon."). A sawed-off shotgun is included

within the definition of a prohibited offensive weapon. *See* 18 Pa.C.S. § 908(c). Since Appellant was not in physical possession of the shotgun, the issue becomes whether the evidence was sufficient to establish that he had constructive possession of that item. *Commonwealth v. Heidler,* 741 A.2d 213, 215 (Pa.Super.1999) ("Possession can be found by proving actual possession, constructive possession or joint constructive possession."); *see also Commonwealth v. Macolino,* 503 Pa. 201, 469 A.2d 132 (1983); *Commonwealth v. Sanes,* 955 A.2d 369 (Pa.Super.2008); *Commonwealth v. Gladden,* 445 Pa.Super. 434, 665 A.2d 1201 (1995); *Commonwealth v. Nelson,* 399 Pa.Super. 618, 582 A.2d 1115 (1990). In this case, Appellant does not challenge the characterization of the weapon seized as a prohibited offensive weapon; he argues that the evidence was insufficient to establish that he constructively possessed the sawed-off shotgun.

**¶ 17** In order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control. *Sanes, supra.* "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." *Commonwealth v. Valette,* 531 Pa. 384, 613 A.2d 548, 550 (1992) (quoting *Macolino, supra* at 134).

**¶ 18** The evidence herein was that Appellant had the keys to 657 Clinton Street in his pocket and that there were letters, bills, and documents addressed to him located therein.[1] He answered the door and

---

1. Since the evidence must be viewed in the light most favorable to the Commonwealth

and all reasonable inferences from the evidence granted to it, we cannot agree with

allowed officers to enter that location. He was the sole adult present at 657 Clinton Street when the warrant was executed, and only an infant was present at that time. Under the circumstances, he clearly had the ability to exercise control over the shotgun. In addition, the evidence established that Appellant had hidden a significant amount of cocaine in his buttocks and various indicia of drug-dealing activities were found on the premises, including another handgun. We conclude that all of this evidence and the inferences created by that evidence establish that Appellant intended to exercise control over the shotgun located behind the stereo in order to aid his criminal enterprise. The evidence was therefore sufficient to establish his constructive possession of the shotgun.

¶ 19 Appellant also asserts that his conviction of possession of a prohibited offensive weapon located behind a stereo in the living room cannot be sustained in light of the fact that the jury failed to reach a unanimous verdict that he possessed the drugs openly displayed in the living room and kitchen. However:

> In this jurisdiction, inconsistent verdicts are not a basis for reversal. *Commonwealth v. Larsen*, 452 Pa.Super. 508, 682 A.2d 783 (1996). "The rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment. [A]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence." *Commonwealth v. Miller*, 441 Pa.Super. 320, 657 A.2d 946, 948 (1995). Inconsistent verdicts

by a jury will not be disturbed, provided that the Commonwealth produces sufficient evidence of the crime for which the defendant is convicted. *Id.*

*Commonwealth v. Gillen*, 798 A.2d 225, 230 (Pa.Super.2002). Thus, the jury's finding regarding Appellant's possession of the drugs in the kitchen and living room does not impact upon our decision as to whether the evidence was sufficient to establish Appellant's constructive possession of the shotgun.

▊▊▊ ¶ 20 We now address the Commonwealth's appeal. In this case, the Commonwealth sought application of the mandatory sentencing provision at 42 Pa. C.S. § 9712.1, which provides (emphases added):

> (a) **Mandatory sentence.**—Any person who is convicted of a violation of section 13(a)(30) of the act of April 14, 1972 (P.L. 233, No. 64), [35 P.S. § 780–113] known as The Controlled Substance, Drug, Device and Cosmetic Act, **when at the time of the offense the person** or the person's accomplice **is in physical possession or control of a firearm,** whether visible, concealed about the person or the person's accomplice or within the actor's or accomplice's reach or **in close proximity to the controlled substance,** shall likewise be sentenced to a minimum sentence of at least five years of total confinement.

That section further indicates:

> (c) **Proof at sentencing.**—Provisions of this section shall not be an element of the crime, and notice thereof to the defendant shall not be required prior to

---

Appellant's assertion that the letters, bills, and other documents located at 657 Clinton Street could have belonged to his father, who shared his name. The testimony adduced by the Commonwealth indicated that all that correspondence was addressed to Appellant, and Appellant answered the door. Police records

indicated that 657 Clinton Street was Appellant's address, and Appellant's father was not at that location when the warrant was executed. Thus, we conclude that the letters, bills, and other documents with Appellant's name that were found at 657 Clinton Street belonged to Appellant rather than his father.

conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. **The court shall consider any evidence presented at trial** and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

42 Pa.C.S. § 9712.1.

> Generally, a challenge to the application of a mandatory minimum sentence is a non-waiveable challenge to the legality of the sentence. *Commonwealth v. Leverette*, 911 A.2d 998, 1002 (Pa.Super.2006). Issues relating to the legality of a sentence are questions of law, as are claims raising a court's interpretation of a statute. *Commonwealth v. Ausberry*, 891 A.2d 752, 754 (Pa.Super.2006). Our standard of review over such questions is *de novo* and our scope of review is plenary. *See Leverette*, 911 A.2d at 1002.

*Commonwealth v. Diamond*, 945 A.2d 252, 256 (Pa.Super.2008).

¶ 21 Various factors have led us to conclude that a new sentencing hearing is required so that the court can reconsider the applicability of section 9712.1. First, Appellant and the sentencing court are under the incorrect impression that application of section 9712.1 was impacted by the fact that the jurors did not all agree that Appellant possessed the drugs located in the kitchen and living room. As noted, in response to specific questions posed by the sentencing court, the jury informed the court that it had reached a unanimous

conclusion that Appellant possessed the drugs located on his person but had not unanimously decided that he possessed the drugs in the living room and the kitchen.

¶ 22 The law is clear that the jury's findings in this regard were not dispositive on the issue of whether Appellant possessed those drugs for purposes of application of the mandatory minimum sentencing provision. *Commonwealth v. Kleinicke*, 895 A.2d 562 (Pa.Super.2006) (*en banc*). This case involved imposition of a five-year mandatory minimum sentence that was within the statutory maximum authorized for possession of cocaine with intent to deliver.[2] Thus, the sentencing court was to determine application of the mandatory minimum by a preponderance of the evidence based on all the evidence presented at trial, and the sentencing court's application of the mandatory minimum could be inconsistent with the jury's inability to reach a unanimous conclusion regarding Appellant's possession of the drugs in the kitchen and living room. *Id.*

¶ 23 This case has been unduly complicated by the view that the jury's findings that Appellant did not possess the drugs found in the kitchen and living room somehow pertained to application of 42 Pa.C.S. § 9712.1. Appellant argued to the sentencing court that the Commonwealth had to establish that the drugs possessed by Appellant personally were in close proximity to one of the two guns. However, under *Kleinicke*, a jury's verdict does not bind the sentencing court in its application of a mandatory minimum sentencing provision as long as the minimum does not exceed the statutory maximum for the crime in question.

---

**2.** Appellant was convicted under 35 Pa.C.S. § 780–113(a)(30) of possession of cocaine, a    Schedule II controlled substance.

¶ 24 The sentencing court accepted Appellant's incorrect legal premise because in its opinion in support of its action, the court stated, "While the evidence did show close proximity between a handgun and bulk cocaine on top of the refrigerator, because the Defendant was found in possession of only the drugs on his physical person, this proximity was irrelevant for the determination of the mandatory minimum's application." Trial Court Opinion, 8/19/08, at 3 n. 1. As noted, this conclusion is erroneous under *Kleinicke.*

¶ 25 Next, we observe that the sentencing court did not comply fully with the mandates of section 9712.1(c), which states that the court "shall" consider "all the evidence" produced at trial in determining application of this provision. At the original sentencing, the court merely stated that its "finding in this matter is that the Commonwealth has not met, by a preponderance of the evidence, the requirements under 42 Pa.C.S. § 9712[.1]." N.T. Sentencing, 1/23/08, at 17. Similarly, at resentencing, the court announced, "I do not find that there was sufficient evidence for application ... of the guns and drug five-year mandatory in this matter." N.T. Reconsideration and Modification of Sentence, 4/2/08, at 15. It did not elaborate further and did not examine the rather extensive evidence presented at trial.

¶ 26 Significantly, the sentencing court did not outline the principle of constructive possession as it related to Appellant's possession of the narcotics located in his home and did not apply the evidence presented at trial. It should have weighed whether the Commonwealth established **by a preponderance of the evidence** and in light of **all** the evidence presented at trial whether Appellant constructively possessed the cocaine in the kitchen and living room.

¶ 27 We note that at the beginning of the jury trial, Appellant demanded that no evidence regarding the discovery of the handgun on the refrigerator be submitted to the jury. Counsel's position was that Appellant had not been charged in connection with his ownership of that gun, which was not stolen, and that while the existence of the handgun "may be relevant at some later time for sentencing purposes, if we get to it, it's not relevant for the jury's determination." N.T. Jury Trial, 10/29/07, at 8.

¶ 28 In response, the Commonwealth claimed that the handgun was relevant because it was found "sitting right next to a plate of bulk cocaine with razor blades." *Id.* at 9. The trial court ruled that the photograph of the handgun sitting next to the cocaine found in the kitchen would be admitted at trial. Thus, that photograph established that cocaine was found next to a handgun on top of the refrigerator in Appellant's kitchen.

¶ 29 We have affirmed, utilizing the doctrine of constructive possession, that Appellant possessed the sawed-off shotgun found behind the stereo system in the living room. The principle of constructive possession applies to Appellant's possession of the drugs located in the living room and kitchen for purposes of section 9712.1. The sentencing court did not discuss this principle and did not apply it to the evidence presented at trial.

¶ 30 Finally, the sentencing court herein did not have the benefit of our decision in *Sanes, supra,* which was decided on August 4, 2008, when it imposed this April 2, 2008 sentence. In *Sanes,* we interpreted the meaning of "in close proximity" for purposes of application of section 9712.1. We gave that term a very expansive meaning and actually held that handguns found hidden in a closet were in close proximity to drugs found in the same room.

¶ 31 We also applied federal cases interpreting a sentencing provision that had the same purpose as the one herein as well as Pennsylvania decisions determining the meaning of the term "in close proximity" in another statutory provision, the Forfeiture Act, 42 Pa.C.S. § 6801. At section 6801(a)(6)(ii), the Forfeiture Act states that where money or negotiable instruments are found "in close proximity" to illegally-possessed drugs, there is a rebuttable presumption that those items were the proceeds of unlawful drug sales and thus, subject to forfeiture. In two cases interpreting the Forfeiture Act, *Commonwealth v. Heater*, 899 A.2d 1126 (Pa.Super.2006), and *Commonwealth v. Giffin*, 407 Pa.Super. 15, 595 A.2d 101, 104 (1991), we concluded that cash located in the same residence could be considered to be in close proximity to drugs found in another portion of the same residence. That interpretive case law has a significant impact on the application of section 9712.1 to this case.

¶ 32 In summary, we believe that a new sentencing hearing is required in light of 1) the sentencing court's misapprehension regarding the binding effect of the jury verdict with respect to the drugs found in the kitchen and living room; 2) its failure to acknowledge the principle of constructive possession regarding Appellant's possession of those drugs; 3) its lack of consideration of all the evidence presented at trial for purposes of determining whether Appellant constructively possessed the drugs found in his house for purposes of applying section 9712.1; and 4) promulgation of interpretive guidance from this Court as to the meaning of "in close proximity" in section 9712.1. Accordingly, we vacate the judgment of sentence and remand for a new sentencing hearing so that the sentencing court can correctly determine application of section 9712.1 to this case.

¶ 33 Judgment of sentence vacated. Case remanded for a new sentencing hearing. Jurisdiction relinquished.

¶ 34 Judge SHOGAN Concurs in the Result.