J-S44010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT HILL | : | |
| | : | |
| Appellant | : | No. 3742 EDA 2016 |

Appeal from the Judgment of Sentence July 8, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006158-2014

BEFORE:  LAZARUS, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                         **FILED JULY 27, 2018**

Robert Hill appeals *pro se* from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his jury conviction for possession of a firearm (prohibited).[1]  Hill received a 4-10 year sentence of incarceration for his offense, a penalty below the mitigated range of the Sentencing Guidelines.  After careful review, we affirm.

The trial court aptly set forth the facts of this case as follows:

> Ms. Tia Hughes, a childhood friend of [Hill], testified that on May 7, 2014, around 4:30-5:00 p.m. she arrived to a friend's house on 2029 Vicci Street for a cookout.  During the cookout, Ms. Hughes and [Hill] got into an argument.  As [Hughes] was walking away to her car, [Hill] hit her from behind in the back of her head.  Ms. Hughes then turned around and started hitting [Hill] back.  As Ms. Hughes was about to get in her car, she saw [Hill] pick up a brick.  [Hughes] was not sure if he was going to hit her with it or break her car window.  Someone at the party, in an attempt to break up the fight, took the brick from [Hill].  Ms. Hughes then

---

[1] 18 Pa.C.S. § 6105(a)(1).

got into her car and drove to pick up her daughter to return back to the cookout. She arrived back at the Vicci Street residence around 8:30 p.m. When she returned to the residence, she witnessed [Hill] standing in the doorway of 2029 Vicci Street with a gun in his hand. [Hill] pointed the gun in her general direction[,] at which time she ducked. As [Hill] pointed the gun in Ms. Hughes's direction, she heard "click, click, click." Ms. Hughes's daughter then called the police.

The police came within minutes. The officers went into the residence at 2029 Vicci Street and escorted [Hill] outside. Ms. Hughes was then brought down to the police station. The officers then showed Ms. Hughes the firearm that they recovered from the residence. She stated that it looked like the gun that [Hill] pointed in her direction earlier that night.

Ms. Brianna Phillips, Ms. Hughes's daughter, testified to the events that occurred on the night in question. Around 9:00 p.m. that night, [Phillips] had received a call from her mom telling her that she had a fight with [Hill]. Ms. Phillips took the bus to Bouvier Street with her grandmother and Ms. Hughes picked them up from that location. Ms. Phillip's noticed that her mother's hair was pulled out, her face was scratched and that she had a swollen lip. As they were driving back to Vicci Street, [Hill] called Ms. Hughes's phone multiple times. Ms. Phillips heard her mother and [Hill] screaming at each other over the phone and heard [Hill] say something like "I have a gun too." Once they arrived to 2029 Vicci Street, she saw [Hill] standing in the doorway at that residence. As Ms. Hughes and [Hill] were about to talk, Ms. Phillips noticed something on the side of [Hill]. [Hill] then lifted up his arm and she heard one click and then he pointed it at Ms. Hughes and she heard another click. Ms. Phillips then called the police. When the police took the gun from the house, she was not asked to identify it, but she recognized it as the gun [Hill] possessed.

Officer Leroy Ziegler received a radio call on the night in question for a person with a gun at 2029 Vicci Street. Officer Ziegler noted that he was there earlier that night in connection with another radio call reporting screams. He left the first time because there was already two or three police vehicles on scene. [After t]he second radio call, he reported again to the scene and was met by three females. He noticed [Hill] standing in the doorway of 2029 Vicci Street. Ms. Hughes told Officer Ziegler that during an argument with [Hill], he pulled out a silver handgun, pointed it at her, her daughter and mother and pulled the trigger. Officer

- 2 -

> Ziegler and his partner then walked over toward [Hill] and asked him if he was involved in an argument with the three females and he said "no." Officer Ziegler then asked [Hill] if he and his partner could enter his house and he said, "yes, you will not find a gun." [Hill] and the two officers then walked into the house. Officer Ziegler noticed an older male in the house, standing in the living room. Officer Ziegler explained that when you first walk in, about 10 to 15 feet to the left of the front door is a stairwell and at the bottom of the steps was a piano. Officer Ziegler then observed a silver revolver behind the piano. Officer Ziegler's partner recovered the handgun and then he placed [Hill] under arrest.

Trial Court Opinion, 11/30/17, at 2-4 (citations to notes of testimony omitted).

Hill was charged with aggravated assault,[2] possession of a firearm (prohibited), firearms not to be carried without a license,[3] simple assault,[4] and recklessly endangering another person.[5]

After a two-day trial held in May 2016, a jury convicted Hill of the above-mentioned firearms offense and acquitted him of aggravated assault.[6] He was sentenced to a below-the-mitigated range sentence of 4-10 years' incarceration. Hill filed a post-sentence motion raising sufficiency and weight of the evidence claims. The motion was denied by operation of law. On May

---

[2] 18 Pa.C.S. § 2702(a).

[3] 18 Pa.C.S. § 6106(a)(1).

[4] 18 Pa.C.S. § 2701(a).

[5] 18 Pa.C.S. § 2705.

[6] All other charges were *nolle prossed*.

16, 2017, Hill was permitted to proceed *pro se* after a **Grazier**[7] hearing; he timely filed a notice of appeal.

On appeal, Hill presents the following issues for our review:

(1) Whether the Commonwealth establishe[d] any evidence set forth for a violation of the Uniform Firearms Act[,] 18 Pa.C.S. § 6105(a.1), [t]o sustain the verdict of guilty by the jury.

(2) Whether the Court erred or abused its discretion in the jury instruction, pursuant to Pa.R.Crim.P. 564, and the United States and [t]he Pennsylvania Constitution, [w]hen the jury asked the definition of § 6105 Possession of Firearm Prohibited after the Commonwealth had presented its case-in-chief.

(3) Whether trial counsel was ineffective for failing to object [to] the court's defining of possession of firearm prohibited, and the search of 2029 Vi[cci] [S]treet.

(4) [Did t]he court abuse its discretion under [t]he Pennsylvania Sentencing Code[,] 42 Pa.C.S. § 9781(b), when applying the sentence[] enhancement under 18 Pa.C.S. 6105(a.1) penalty, after appellant was acquitted by the jury of any use or possess[ion] of a firearm?

Appellant's Brief, at 3.

In his first issue on appeal, Hill challenges the sufficiency of the evidence[8] for his firearm offense, claiming that because he was acquitted of

_____

[7] **See Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998) (when waiver of right to counsel is sought at post-conviction and appellate stages, on-the-record determination should be made that waiver is knowing, intelligent, and voluntary).

[8] In evaluating a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences

aggravated assault his conviction cannot stand. He also alleges that the Commonwealth failed to prove that he physically possessed a firearm. We disagree.

Pursuant to section 6105 (Persons not to possess, use, manufacture, control, sell or transfer firearms):

> (1)    A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1).[9]   The Commonwealth may sustain its burden of proving possession under section 6105 by means of wholly circumstantial evidence. "In order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to

---

therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. **Commonwealth v. Swann**, 635 A.2d 1103 (Pa. Super. 1994). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." **Commonwealth v. Swerdlow**, 636 A.2d 1173, 1176 (Pa. Super. 1994) (citing **Commonwealth v. Hardcastle**, 546 A.2d 1101, 1105 (Pa. 1986)). Furthermore, "it is within the province of the factfinder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." **Commonwealth v. Moore**, 648 A.2d 331, 333 (Pa. Super. 1994) (citations omitted).

[9] Hill does not contest that he has been convicted of an enumerated offense under subsection (b) of section 6105.

exercise such control." ***Commonwealth v. Harvard***, 64 A.3d 690, 699 (Pa. Super. 2013), citing ***Commonwealth v. Gutierrez***, 969 A.2d 584, 590 (Pa. Super. 2009). The factfinder may infer an intent to maintain a conscious dominion based on a totality of the circumstances; moreover, circumstantial evidence may be used to establish a defendant's possession of contraband. ***Id.***

Instantly, Hughes and Phillips testified that Hill pointed a gun in the air, then pointed the gun at Hughes, and, at the time he pointed the gun at Hughes, the women heard two "click" noises. Phillips also testified that before the incident occurred, she heard Hill say on the phone that he had a gun. After the incident, the police recovered a silver, .32 caliber Smith & Wesson revolver hidden behind a piano in the home that Hill entered immediately after pointing the gun at Hughes. Finally, both women testified that the recovered gun was the same gun Hill pointed at Hughes. Thus, we conclude that the combination of the evidence sufficiently establishes that Hill possessed the gun beyond a reasonable doubt. ***Swerdlow***, ***supra***; ***Hardcastle***, ***supra***.

Moreover, the fact that the jury acquitted Hill of aggravated assault is of no moment. In ***Gutierrez***, ***supra***, our Court noted that:

> In this jurisdiction, inconsistent verdicts are not a basis for reversal. ***Commonwealth v. Larsen***, [] 682 A.2d 783 (Pa. Super. 1996). "The rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment. [A]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence." ***Commonwealth v. Miller***, 657 A.2d 946, 948 (Pa. Super. 1995). Inconsistent verdicts by a jury will

not be disturbed, provided that the Commonwealth produces sufficient evidence of the crime for which the defendant is convicted. ***Id.***

***Gutierrez***, 969 A.2d at 591 (citation omitted). Here, as we have established, the Commonwealth was required to prove that Hill had been convicted of an offense enumerated in section 6105(b) and that he possessed, used, or controlled a firearm in this Commonwealth. 18 Pa.C.S. § 6105(a)(1). The testimony presented at trial was clearly sufficient to prove Hill's culpability under section 6105(a)(1); therefore, the jury's verdict should not be reversed. ***Miller***, supra.

In his next issue, Hill contends that the court abused its discretion when it defined "possession" by utilizing the definition of constructive possession. Hill has waived this claim by failing to object to this instruction at trial. ***See*** N.T. Jury Trial, 5/5/16, at 92; ***see also*** Pa.R.A.P. 302(a).

Even if we were to address the merits of this claim, it warrants no relief. It is well established that when a defendant is not found in actual possession of a firearm, the Commonwealth may prove that he or she constructively possessed the firearm to sustain its burden under section 6105(a)(1). ***Commonwealth v. Sanes***, 955 A.2d 369 (Pa. Super. 2008).

Hill next raises claims of trial counsel's ineffectiveness for failing to object to the aforementioned constructive possession jury instruction, for ineffectively cross-examining the arresting officer regarding Hill's consent to search the residence where the firearm was recovered, and also for counsel's direct examination of the officer at the preliminary hearing. As our courts

have repeatedly stated, we will defer all claims of ineffectiveness until collateral review. *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) ("We now hold that, as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review."); *see also Commonwealth v. Holmes*, 79 A.3d 562, 563-64 (Pa. 2013) (holding court retains discretion to entertain ineffectiveness claims on post-verdict motions or direct appeal where: (1) ineffectiveness claim is apparent from record and meritorious to extent that immediate consideration best serves interests of justice; or (2) where good cause is shown and defendant knowingly and expressly waives entitlement to seek post-conviction relief review). Thus, these claims are premature.

Finally, Hill contends that the trial court erred in applying a sentencing enhancement under section 6105(a.1) to his sentence, and that the enhancement is unconstitutionally vague. Hill also argues that elements of the enhancement had to be proven, beyond a reasonable doubt, by a jury in accordance with the dictates of *Alleyne*.[10] The certified record reveals that Hill was neither sentenced to a mandatory minimum sentence nor a sentencing enhancement.[11] Thus, his claim is frivolous.

---

[10] *See Alleyne v. United States*, 570 U.S. 99 (2013) (holding that element of offense that increases mandatory minimum sentence must be found by jury beyond reasonable doubt).

[11] Notably, the Sentencing Guidelines prohibit the application of a deadly weapon enhancement for violations of the Uniform Firearms Act. *See* 204 Pa. Code § 303.10(3)(vii).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/18