J-S05009-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ARRIENNE BATCHER, | : | |
| | : | |
| Appellant | : | No. 2022 WDA 2013 |

Appeal from the Judgment of Sentence November 21, 2013,
Court of Common Pleas, Allegheny County,
Criminal Division at No(s): CP-02-CR-0015016-2012
and 2013-09464

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ARRIENNE BATCHER, | : | |
| | : | |
| Appellant | : | No. 1996 WDA 2014 |

Appeal from the Judgment of Sentence November 21, 2013,
Court of Common Pleas, Allegheny County,
Criminal Division at No(s): CP-02-CR-0009464-2013

BEFORE:  DONOHUE, SHOGAN and STABILE, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED FEBRUARY 4, 2015**

Arrienne Batcher ("Batcher") appeals from the judgments of sentence entered following his convictions of persons not to possess firearms, 18 Pa.C.S.A. § 6105, and firearms not to be carried without a license, 18 Pa.C.S.A. 6106.[1]  We affirm.

---

[1]  Batcher's appeals from these separate judgments of sentence have been consolidated.

The trial court summarized the factual background in this case as follows:

On October 24, 2012, Detectives Matthew Turko, Justin Simoni and Higgins were patrolling the Homewood neighborhood of Pittsburgh in an unmarked police car. They were patrolling the area due to recent shootings in an effort to develop information about the shootings, provide a reassuring police presence in the community and be a visible deterrent to other criminals. To this end, they had spoken with several residents in an attempt to make their presence known and develop information.. One such person that they spoke with, at approximately 8:30 p.m., was [Batcher], who was standing around with several other people. The detectives asked him for his ID, spoke briefly to him and then allowed him to leave the area.

Approximately fifteen (15) minutes later, as the police vehicle traveled on Brushton Avenue where a recent shooting had occurred, the detectives observed three (3) males standing in the shadows next to a garage used to repair vehicles. Detective Higgins illuminated the men with a flashlight. Two (2) of the men did not react to the vehicle or the flashlight, but [Batcher], who was standing between the two (2) men, appeared to be surprised or shocked, as described by Detectives Turko and Simoni.. As Detective Higgins stopped the car, [Batcher] reached into his waistband with his right hand, turned around and walked into the garage, away from the detectives. Detective Turko testified that, based on his experience as a narcotics detective, guns generally are carried in the waistband, and he believed that [Batcher] was either retrieving a firearm or hiding a firearm in his waistband at that time.

The three (3) detectives got out of the vehicle and followed [Batcher] into the nearby garage, which had a concrete floor. The detectives observed [Batcher]

ducking into the right front corner of the garage pulling an object from his waistband. Detective Turko then observed [Batcher] frantically moving his right hand as if there was something in his hand that he needed to get rid of quickly. As [Batcher] moved his arm in a tossing motion, Detectives Turko and Simoni heard the sound of a metallic object clanking on the concrete floor. Detective Turko described the sound as the metallic slide of a gun hitting a concrete floor. Detective Turko had previously accidentally dropped a gun on concrete, and it had made a similar sound.

After hearing the noise of metal impacting on concrete, Detective Turko entered the garage and detained [Batcher], while Detective Simoni went into the garage to look for the firearm. The garage was fairly well-lit, with two fluorescent lights in the center of the garage. The only item in the immediate vicinity of [Batcher] was a bench seat from a pick-up truck, which Detective Turko would have been able to see him move. Deyective [sic] Turko was confident that the sound of metal hitting or impacting concrete did not come from any movement of the bench seat. As Detective Turko arrested him, [Batcher] asked the detective why they were stopping him and stated that he was going into the garage to retrieve his cell phone. A cell phone was found on [Batcher] at the time of his arrest.

A firearm, a .380 caliber Kel-Tec pistol with a barrel of 2 ¾ inches, was found approximately two (2) feet from the area where [Batcher] had stood in the garage and was seen motioning with his arm. The gun was located behind the bench seat of the pick-up truck. The firearm was loaded, containing six (6) rounds of ammunition. The gun was taken to the Allegheny County Medical Examiner's Office crime lab and found to be operable and in good working condition.

Trial Court Opinion, 7/22/14, at 2-5 (footnote and citations to notes of testimony omitted).

Batcher was arrested and charged with the aforementioned crimes. Prior to trial, the Commonwealth severed the charges. A jury trial on the firearms not to be carried without a license charge ("§ 6106 charge") commenced in July 2013, but ended in a mistrial during jury deliberations. A second jury trial on the § 6106 charge occurred on August 20-21, 2013, at the conclusion of which he was found guilty. Subsequently, on November 21, 2103, Batcher appeared for a bench trial on the persons not to possess firearms charge ("§ 6105 charge"). The parties stipulated to the introduction of the testimony from both the July and August trials, and the Commonwealth offered additional evidence in the form of certified convictions that would make Batcher a person prohibited from possessing a firearm. The trial court convicted Batcher of the § 6105 charge. It later sentenced him to three to six years of incarceration on the § 6106 conviction and four to eight years of incarceration on the § 6105 conviction, order to run concurrently. This timely appeal follows.

On appeal, Batcher argues only that the evidence was insufficient to establish that he possessed the firearm recovered from the garage, and therefore that neither of his convictions can stand. Batcher's Brief at 19. When reviewing a sufficiency of the evidence claim, "we must determine whether the evidence admitted at trial, as well as all reasonable inferences

drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa. Super. 2013) (quoting *Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011)). When performing this review, "we may not reweigh the evidence or substitute our own judgment for that of the fact finder." *Id.* The Commonwealth may rely solely on circumstantial evidence to support a conviction, and the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Hutchinson*, 947 A.2d 800, 806 (Pa. Super. 2008).

The crimes of which Batcher was convicted are defined as follows:

> **§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**
>
> **(a) Offense defined.--** (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a).

> **§ 6106. Firearms not to be carried without a license**
>
> **(a) Offense defined.—** (1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm

> concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a).

Thus, to be convicted of either crime, the Commonwealth was required to prove that Batcher possessed a firearm. The Commonwealth could establish this element of the offenses by proving either actual possession or constructive possession of a firearm.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion."

*Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011) (citation omitted). "In order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control." *Commonwealth v. Harvard*, 64 A.3d 690, 699 (Pa. Super. 2013). (quoting *Commonwealth v. Gutierrez*, 969 A.2d 584, 590 (Pa. Super. 2009)). "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." *Id.*

The evidence and all reasonable inferences therefrom, when viewed in the light most favorable to the Commonwealth, establishes that as three undercover detectives drove down Brushton Avenue at approximately 8:45 in the evening on October 24, 2012, they saw three men standing just in front of a garage. N.T., 7/18/13, at 42-43; N.T., 8/20/13, at 38, 74-75. From a distance of approximately ten feet, one detective illuminated the men with a flashlight. N.T., 7/18/13, at 42-43, 68; N.T., 8/20/13, at 38, 75. Two of the men exhibited no response to the light while the third, Batcher, displayed a look of panic. N.T., 7/18/13, at 43; N.T., 8/20/13, at 40, 75. Batcher immediately reached into his waistband, turned around and entered the garage. N.T., 7/18/13, at 40, 43; N.T., 8/20/13, at 75. As Batcher did this, the detectives pulled over in front of the garage and exited the vehicle. N.T., 7/18/13, at 69; N.T., 8/20/13, at 75. Detective Matthew Turko followed Batcher into the garage, which was partially lit by two overhead fluorescent lights. N.T., 7/18/13, at 45, 60; N.T., 8/20/13, at 42. He observed Batcher's right arm move in a manner consistent with throwing and then heard the sound of metal hitting the concrete floor. N.T., 7/18/13, at 45, 47-48 N.T., 8/20/13, at 42-43. As he secured Batcher, Detective Justin Simoni, who also heard the sound of metal hitting the concrete floor, took two or three steps into the garage and found a gun in the area toward which Batcher had made the throwing motion. N.T., 7/18/13, at 69; N.T., 8/20/13, at 76. The gun was found approximately two to three feet from

Batcher. N.T., 7/18/13, at 70; N.T., 8/20/13, at 76. There were no other metal items in that portion of the garage except for a four to five foot long bench seat from a truck, which had metal legs. N.T., 7/18/13, at 48; N.T., 8/20/13, at 46. Detective Turko, who was the first detective to enter the garage, testified that the metallic sound did not come from the bench seat, as he was so close to Batcher entering the garage, in both time and space, that he would have seen if Batcher moved the bench seat. N.T., 7/18/13, at 48; N.T., 8/20/13, at 46. We have no hesitancy in concluding that this evidence, when viewed as our standard of review requires, establishes that Batcher had both the ability to consciously exercise control over the gun as well as the intent to exercise such control. *See Harvard*, 64 A.3d at 699. Batcher was seen reaching into his waistband and then making a throwing motion, and a gun was recovered from the area into which he made the throwing motion. He was apprehended immediately, within a few feet of where the gun was found. There was no other item in the vicinity that could have made the sound of metal on concrete the detectives heard.

We note that Batcher takes the position that "this is not a case in which the Commonwealth could establish guilt via proof of constructive, as opposed to actual, possession. This is so because … [the gun] was not, at the moment it was found, an object over which he either exercised control or intended to exercise control. To the contrary, [Batcher] … plainly wanted no part of the firearm found in the corner of the garage[.]" Batcher's Brief at

22 (citations omitted). Batcher seems to argue that because he discarded the gun, or at least was not attempting to gain control of the gun at the time it was discovered, he cannot be found to have constructively possessed it. He is mistaken. Dominion and control over an item, as required for constructive possession, can be exhibited by the discarding of an item. *See, e.g., Commonwealth v. Mann*, 820 A.2d 788, 793 (Pa. Super. 2003) (holding evidence sufficient to establish defendant possessed firearm, where he was observed throwing firearm in vacant lot). As the evidence here, and all reasonable inferences therefrom, is sufficient to establish that Batcher threw the firearm into the portion of the garage in which it was found, it matters not that he was not attempting to gain control of it when the police discovered it.

The balance of Batcher's brief is a recasting of the evidence in a light that favors Batcher's position. Doing so is but an attempt to have this Court reweigh the evidence and make credibility determinations, which we cannot do. *Cox*, 72 A.3d at 721. Batcher also attempts to analogize the facts of his case to those in *Commonwealth v. Boatwright*, 4523 A.2d 1058 (Pa. Super. 1982), in which this Court found the evidence insufficient to establish constructive possession. Batcher's argument is unavailing, as this case is readily distinguishable. In *Boatwright*, the police received a radio call reporting three "suspicious" men sitting in a car at a particular location. Officers responded and as they approached the vehicle, they observed

Boatwright, who was seated in the front passenger's seat, "moving towards his left rear. The officer could not see appellant's hand or arm, only a movement of his body." ***Boatwright***, 453 A.2d at 1058. After removing Boatwright from the vehicle, the officer observed a firearm on the left rear floor of the vehicle. There were also men seated in the driver's seat and the left rear seat. The car was registered to the driver's girlfriend and the firearm was registered to a woman unknown to any of the men. We concluded that these facts could establish no more than Boatwright's mere presence at the scene where the gun was found, and that mere presence was not sufficient to establish constructive possession. ***Id.*** at 1059. These facts are markedly different from the facts of the present case, in which the totality of the circumstances, as established by the evidence and viewed in the light most favorable to the Commonwealth, tie Batcher to the firearm; in other words, in this case, there is evidence beyond Batcher's mere presence at the scene where the firearm was discovered.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/2015

- 10 -