J-S79041-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| STEPHEN WHITE | : | |
| | : | |
| Appellant | : | No. 239 EDA 2017 |

Appeal from the Judgment of Sentence August 11, 2016
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0002455-2015

BEFORE: GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JANUARY 19, 2018**

Appellant, Stephen White, appeals from the judgment of sentence entered in the Montgomery County Court of Common Pleas, following his jury trial convictions for one count each of loitering and prowling, conspiracy to commit loitering and prowling, persons not to possess firearms, and two counts of receiving stolen property ("RSP").[1]  We affirm.

The trial court opinion accurately set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises four issues for our review:[2]

> WAS [APPELLANT] PROPERLY PROSECUTED IN MONTGOMERY COUNTY FOR CRIMES WHICH, IF

---

[1] 18 Pa.C.S.A. §§ 5506; 903; 6105; 3925, respectively.

[2] For purposes of disposition, we have reordered some of Appellant's issues.

SUFFICIENTLY SUPPORTED BY RELIABLE EVIDENCE, TOOK PLACE IN PHILADELPHIA COUNTY? WAS THERE AN "OVERT ACT" AS DISCUSSED IN [*COMMONWEALTH V. MCPHAIL*, 547 PA. 519, 692 A.2D 139 (1997) (PLURALITY)] THAT TOOK PLACE IN MONTGOMERY COUNTY THAT WOULD SUPPORT THE TRIAL COURT'S VENUE AND JURISDICTION?

DID THE TRIAL COURT ERR WHEN IT FAILED TO SUPPRESS EVIDENCE OBTAINED AS THE RESULT OF WARRANTS FOR TWO SEPARATE RESIDENCES IN PHILADELPHIA AND THEN AGAIN WHEN SAID EVIDENCE WAS ADMITTED DURING THE TRIAL IN THIS CASE? DID THE POLICE OVERREACH BY SEEKING ANY POSSIBLE LOCATION WHERE [APPELLANT] MIGHT HAVE RESIDED IN THE PAST, LEAVING THE WARRANTS TO LACK A SUFFICIENT NEXUS BETWEEN THE ALLEGED CRIMES AND THE LOCATION TO BE SEARCHED AS WELL AS LACKING PROBABLE CAUSE? WERE THE WARRANTS OVERBROAD AND FAILING TO STATE WITH PARTICULARITY THE ITEMS TO BE SEIZED? WERE THE WARRANTS BASED UPON AN UNLAWFUL AND WARRANTLESS DETENTION OF [APPELLANT] AND SUBSEQUENT INVESTIGATION OF HIM?

WAS THERE SUFFICIENT EVIDENCE TO SUPPORT A CONVICTION OF [APPELLANT] FOR EITHER POSSESSION OF A STOLEN WEAPON, A RING[,] OR OF BEING A PERSON NOT TO POSSESS THAT WEAPON?

DID THE TRIAL COURT ERR IN SENTENCING [APPELLANT] TO CONSECUTIVE TERMS OF INCARCERATION FOR CRIMES FOR WHICH THE ELEMENTS ARE NEARLY IDENTICAL. SPECIFICALLY, [APPELLANT] WAS SENTENCED FOR BOTH POSSESSING A STOLEN FIREARM AND FOR BEING A PERSON NOT TO POSSESS THAT SAME FIREARM?

(Appellant's Brief at 5-6).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Steven T. O'Neill, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented.

(*See* Trial Court Opinion, filed April 19, 2017, at 7-17) (finding: **(1)** Pennsylvania Courts of Common Pleas have subject matter jurisdiction over violations of Crimes Code; court in which Appellant was tried is Court of Common Pleas, so it had jurisdiction over all charges against Appellant; under Pa.R.Crim.P. 130(A)(3), when charges arising from same criminal episode occur in more than one judicial district, criminal proceeding on all charges may be brought before one issuing authority in magisterial district within any of judicial districts in which charges arising from same criminal episode occurred; by letter of March 31, 2015, Philadelphia County District Attorney's office sent *McPhail* letter[3] to Montgomery County District Attorney's office agreeing to let Montgomery County prosecute charges of RSP and persons not to possess firearm (which occurred in Philadelphia County); Appellant did not challenge at any time before trial ability of Montgomery County to prosecute charges related to property recovered from his Philadelphia apartment;[4] further, fact

---

[3] In *McPhail*, a plurality of our Supreme Court held that all charges stemming from a single criminal episode must be heard in a single trial, even where some of the charges arose in more than one judicial district. *See McPhail, supra* at 530, 692 A.2d at 145. To implement the holding in *McPhail*, Rule 130 was added to the Pennsylvania Rules of Criminal Procedure. *McPhail* was later superseded by statute. Nevertheless, district attorney's offices still use the term "*McPhail* letter" when discussing the transfer of cases involving a continuing criminal episode spanning different counties.

[4] Appellant insists his issue is a non-waivable jurisdictional challenge. Appellant's claim, however, actually attacks the venue of the court. *See McPhail, supra* at 529, 692 A.2d at 144 (stating: "[T]he place of trial, whether within or without the county where the alleged crime occurred, is a

that jury was deadlocked on burglary charge arising out of Montgomery County does not somehow invalidate proper transfer which took place in this case; because Philadelphia and Montgomery counties agreed to prosecute all charges against Appellant in Montgomery County, venue and jurisdiction in Montgomery County was proper, and Appellant's claim lacks merit; **(2)** police established burglary detail due to multiple burglaries which occurred in Montgomery County; Detective Sergeant Fink testified that during burglary detail on March 21, 2015, Officer Bullock observed Appellant and his cohort drive slowly around high-end neighborhoods at night; when Officer Bullock ran tag on car, there was no record of registration; Detective Sergeant Fink joined in surveillance and twice observed Appellant exit vehicle and approach houses; Detective Sergeant Fink saw Appellant "creeping" around one home and crouching to look into window; based on his training and experience, Detective Sergeant Fink believed Appellant and his cohort were casing homes to burglarize, which gave police reasonable suspicion to stop vehicle; once police stopped vehicle, Detective Sergeant Fink observed, in plain view, ladder

---

matter of venue, not jurisdiction"; unlike subject matter jurisdiction, venue is waivable if not properly preserved). Appellant raised this issue for the first time at the hearing on his post-sentence motion. Appellant's failure to object to venue at the appropriate stage of the proceedings constitutes waiver of his claim on appeal. *See generally* Pa.R.Crim.P. 578 (stating motion for change of venue should be raised in omnibus pre-trial motion at "earliest feasible" time); *Commonwealth v. Strunk*, 953 A.2d 577 (Pa.Super. 2008) (stating party's failure to raise error and request remedy at appropriate stage of proceedings constitutes waiver on appeal; party may not remain silent and later complain of matters which, if erroneous, court could have corrected).

matching description of ladder contained in intelligence bulletin regarding February 7, 2015 burglary, as well as multiple cell phones, gloves, and screwdrivers, which are commonly used in burglaries; officers had probable cause to arrest Appellant for loitering and prowling; affidavits of probable cause issued for search warrants of Appellant's homes outlined Detective Sergeant Fink's training and experience, Appellant's criminal history, and contained extensive detail regarding recent Montgomery County burglaries, as well as facts which led to instant charges; affidavits also indicated that at time of Appellant's arrest, he had Pennsylvania driver's license and parole card with address on 10th Street in Philadelphia; further investigation revealed Appellant was registered with Department of Human Services with address on Haverford Avenue in Philadelphia; PennDot records indicated Appellant had car registered to Haverford Avenue address; there was sufficient probable cause to believe items stolen in Montgomery County burglaries would be found in any one of these residences; warrants for Appellant's Philadelphia addresses were not overly broad and stated specifically that police sought: proof of residence, Beretta 9-mm handgun, and assorted jewelry; police ultimately recovered from Appellant's residence ring and gun stolen in February 7, 2015 burglary; court properly denied motion to suppress;[5] **(3)** totality of

_____

[5] We depart only from the trial court's statement on page nine that Appellant waived his challenge to the admissibility at trial of the search warrants and property recovered during execution of those warrants. Appellant preserved

circumstances showed Appellant had constructive possession of firearm; mail, phone records, expired driver's license, and testimony from Appellant's girlfriend tied Appellant to location where police recovered stolen gun; in bifurcated portion of trial following jury's verdict on other charges, parties stipulated Appellant was person not to possess firearms due to prior burglary conviction; evidence was sufficient to sustain Appellant's convictions for RSP (firearm) and persons not to possess firearms;[6] **(4)** as presented, Appellant's challenge to imposition of consecutive sentences does not raise substantial question; moreover, sentence was not "clearly unreasonable"; in light of Appellant's extensive criminal history, aggregate sentence of 9 to 20 years' imprisonment is wholly appropriate; court considered Appellant's extensive

---

his evidentiary challenge by filing a pre-trial motion to suppress, so he did not need to object to admission of the evidence again at trial. *See* Pa.R.Crim.P. 581(J) (stating: "If the court determines that the evidence shall not be suppressed, such determination shall be final, conclusive, and binding at trial, except upon a showing of evidence which was theretofore unavailable, but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its admissibility"); *Commonwealth v. Walker*, 477 Pa. 370, 383 A.2d 1253 (1978) (explaining objection at trial to evidence which court already ruled was admissible in pre-trial suppression proceeding would constitute "useless act"; appellant did not waive challenge to admissibility of evidence at trial where he challenged admissibility of that evidence in pre-trial suppression motion). In any event, because the court properly denied Appellant's suppression motion, admission of the evidence at trial was proper.

[6] To the extent Appellant challenges the sufficiency of the evidence to sustain any other convictions in this case, he waived those complaints for failure to raise them in his Rule 1925(b) statement. *See Commonwealth v. Castillo*, 585 Pa. 395, 888 A.2d 775 (2005) (holding as general rule that issues not raised in Rule 1925(b) statement are waived on appeal).

criminal history, which included numerous crimes against persons, when court fashioned sentence that protected community from Appellant's recidivist behavior; Appellant's firearm offenses are serious and pose danger to community; harms sought to be remedied by Appellant's RSP (firearm) and persons not to possess offenses are different, so court imposed consecutive terms of imprisonment for those crimes; additionally, court imposed concurrent sentences for Appellant's remaining convictions; court did not abuse its discretion in sentencing Appellant[7]).  Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

*Judgment Entered.*

_____

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *1/19/2018*

_____

[7] Appellant's remaining sentencing claims on appeal are waived for failure to preserve them in his Rule 1925(b) statement.  ***See id.***

- 7 -

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY**
**PENNSYLVANIA**
**CRIMINAL DIVISION**

2017 APR 19 PM 2:57

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA : | NO. 2455-15 |
| : | |
| V.                                          : | |
| : | |
| STEPHEN RODNEY WHITE          : | |

## OPINION

O'NEILL, J.                                                                April 19, 2017

The Defendant, Stephen Rodney White appeals from the judgement of sentence entered on August 11, 2016. For the reasons set forth below, the judgement of sentence should be affirmed.

### I.    Facts and Procedural History

On February 7, 2015, the home at 1277 Burnett Road, Huntingdon Valley, Lower Moreland, Montgomery County was burglarized. The homeowners returned to their home that evening to find that the upstairs had been ransacked and jewelry, watches, $2,800 cash, and a 9-millimeter Beretta, serial number J24532Z, were taken. (N.T. May 24, 2016 at 50; 55). The home was entered through the upstairs master bathroom window. Id. at 58; 78. On the ground outside the window, police found a spider web like ladder footprint in the snow. Id. at 80. Sneaker prints and Timberland boot prints were also found at the scene, indicating there were two perpetrators. There were footprints that matched the sneaker print in the master bathroom. Id. at 96. The window was pried open with a pry bar or screw driver. Id. at 97.

73

As a result of this burglary and other burglaries that occurred in Lower Moreland and Abington Townships, Montgomery County, during the months of February and March 2015, Detective Sergeant Stephen Fink of the Abington Police Department was assigned to head a burglary task force. Prior to commencing surveillance, Det. Sgt. Fink reviewed an intelligence bulletin put out by the Lower Moreland Police Department. (Commonwealth's Exhibit 122 ("C-122"); N.T. May 24, 2016 at 147). The bulletin outlined the February 7, 2015 burglary and contained pictures of the two sets of shoe prints and ladder print found at 1277 Burnett Road on February 7, 2015. Id. at 147-150.

On March 21, 2015, the taskforce was conducting surveillance in the residential areas adjacent to Huntingdon Pike for the 11th night in a row. Det. Sgt. Fink positioned plainclothes officers throughout the residential areas adjacent to Huntingdon Pike, which runs through both Lower Moreland and Abington and is in close proximity to Burnett Road. Id. at 151-152. At approximately 8:30 p.m., Officer Dan Bullock observed a white Buick SUV turn off of Moredon Road into a small cul-de-sac containing high end homes, drive around the cul-de-sac, and return to Moredon Road and continue in the same direction of travel. Id. at 152. Officer Bullock ran the license plate on the vehicle and found that there was no registered owner. Id. The vehicle began to travel toward Det. Sgt. Fink's location. Id. at 153. Officer Bullock advised Det. Sgt. Fink that he believed there was one person in the vehicle. Id. Officer Bullock followed the vehicle down Moredon Road and made a left on Pine Road, at which time Det. Sgt. Fink pulled in behind Officer Bullock. Id.

All three vehicles approached a red light at the intersection of Pine and Welsh Road. Id. at 154. Officer Bullock entered the right turn lane and pulled up next to the passenger side of the vehicle at which time he radioed to Det. Sgt. Fink that there was only one person in the car, the driver, who was later identified as Brian Bosket. Id. Det. Sgt. Fink continued to follow the vehicle into another residential neighborhood. Id. at 155.

The vehicle ultimately turned onto Bonnie Lane at which time Det. Sgt. Fink positioned himself at the top of the street. Id. at 155-156, 158. Det. Sgt. Fink observed the vehicle driving very slowly, approximately five miles per hour, down Bonnie Lane. Id. The car stopped at the curve in Bonnie Lane and Det. Sgt. Fink observed a person, later identified as the Defendant, exit the passenger side of the vehicle. Id. at 159. Det. Sgt. Fink observed the Defendant go across the front of the house at 2611 Bonnie Lane and up the driveway on the right side of the house. Id. at 160. Det. Sgt. Fink radioed the other officers on the detail and exited his vehicle. Id. at 161. Det. Sgt. Fink approached on foot in attempt to observe the Defendant. Id. Det. Sgt. Fink briefly lost sight of him and then observed him coming back down the driveway and returning to the Buick. Id. The house was dark and there were no cars in the driveway. Id. at 162.

The Buick then continued to inch down Bonnie Lane and stopped in front of 2635 Bonnie Lane, which was also dark. Id. Again, the Defendant exited the passenger side of the vehicle and went up the driveway. Id. at 163. Det. Sgt. Fink was still on foot and was able to get within about two houses of

3

2635 Bonnie Lane. Id. He observed the Defendant crouching in a row of hedges at the front of the home looking in the windows. Id. at 164, 173. The Defendant did not ring the doorbell or knock on the door. Id. Again the Defendant returned to the Buick. Id. at 174.

At this point Det. Sgt. Fink returned to his car and radioed other officers. Id. at 175. The Buick left Bonnie Lane and continued slowly through the residential area, eventually turning onto Sunflower Way, which was the only point of egress from the neighborhood. Id. at 175-176. The Buick again drove very slowly and stopped at Morning Glory Way and Sunflower Way. Id. at 176. All four plainclothes officers had joined Det. Sgt. Fink at this time. The car remained stopped for a minute or two and then began driving at a normal rate of speed. Id. at 177. At this point Det. Sgt. Fink radioed uniformed Lower Moreland officers and asked them to initiate a traffic stop. Id. Det. Sgt. Fink arrived at the scene of the traffic stop, at which time he observed, in plain view, a ladder matching the description of the ladder in the intelligence bulletin in the third row seating of the Buick. Id. at 179. Det. Sgt. Fink also saw multiple cell phones and gloves in plain view in the center console of the vehicle. Id. at 180. At this point, the Defendant and the driver of the Buick, Brian Bosket, were taken into custody. Id.

On March 22, 2015, Det. Sgt. Fink prepared search warrants for the Defendant's known addresses, as well as the home address of Brian Bosket. Id. at 182. Investigation revealed that the Defendant had a vehicle registered in his name with an address of 7212 Haverford Avenue, Apt. B-4, Philadelphia,

4

PA. Id. at 183. During the execution of the search warrant at the Haverford Avenue apartment, law enforcement recovered mail addressed to the Defendant, an expired driver's license bearing the Defendant's name and Haverford Avenue address, Nike Air Force One sneakers, Timberland boots, a gold diamond ring, and a Beretta 9-millimeter handgun, serial number J24532Z. Id. 188-197. The Beretta and the diamond ring were taken from the home at 1277 Burnett Road on February 7, 2015.

Search warrants were also executed on the Buick and the cell phones found in the center console. In addition to the ladder and cell phones, a ski mask, two pairs of gloves, two screw drivers, a knife, Nike Air Max sneakers, a license plate, dog mace, and a flashlight were recovered from the vehicle. Id. at 211; C-130.

Following a four day jury trial, the Defendant was convicted of Loitering and Prowling at Nighttime[1], Conspiracy to Loitering and Prowling at Nighttime[2], Receiving Stolen Property[3], and, following a bifurcated trial, Person Not to Possess a Firearm.[4] The jury deadlocked on the charges of Burglary[5], Theft By Unlawful Taking[6] and Criminal Trespass.[7]

On August 11, 2016, the Defendant was sentenced to an aggregate term of nine (9) to twenty (20) years' incarceration in a state correctional institution.

---

[1] 18 Pa. C.S.A. § 5506.
[2] 18 Pa. C.S.A. § 903(a)(1).
[3] 18 Pa. C.S.A. § 3925(a).
[4] 18 Pa. C.S.A. § 6105 (a).
[5] 18 Pa. C.S.A. § 3502(a)(2).
[6] 18 Pa. C.S.A. § 3921(a).
[7] 18 Pa. C.S.A. § 3503(a)(1)(ii).

On August 22, 2016, the Defendant filed a timely post-sentence motion. Following a hearing on November 29, 2016, this Court denied the motion by Order of December 16, 2016. This appeal followed. By Order of January 9, 2017, the Court directed the Defendant to produce a statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). The Defendant has since complied with that directive.

## II. Issues

The Defendant raises the following issues in his concise statement, renumbered in the order in which they will be addressed:

1. Defendant was prosecuted for crimes in Montgomery County which, if supported by reliable evidence, took place in Philadelphia County. Although a request was sent in accordance with Commonwealth v. McPhail, 692 A.2d 139 (Pa. 1997), the letter specifically stated that said prosecution was to be used in a Montgomery County investigation into Montgomery County burglaries. The jury in this matter was unable to reach a verdict on the burglary charges and only found Defendant guilty of misdemeanor charges of Loitering and Conspiracy to loiter for actions within Montgomery County and therefore no "overt act" as discussed in McPhail took place in Montgomery County that would support the trial court's venue and jurisdiction.

2. The Trial court erred when it failed to first suppress evidence obtained as the result of warrants for two separate residences in Philadelphia and then again when the Trial Court admitted said evidence during the trial in this case. The warrants were based upon allegations of loitering in Montgomery County and the Defendant, upon detention for those allegations, provided two forms of proper identification for his actual residence. The police overreached by seeking any possible locations where the Defendant might have resided in the past and the warrants thus lacked a sufficient nexus between the alleged crimes and the location to be searched and also lack probable cause. The warrants were overbroad and failed to state with particularity the items to be seized. The warrants were based upon an unlawful and warrantless detention of the Defendant and subsequent investigation of him.

6

3. Absent the evidence gained in reliance of [sic] the improper warrants, there was no evidence sufficient to support a conviction of the Defendant for either possession of a stolen weapon or being a person not to possess that weapon.

4. The Trial Court erred in sentencing Defendant to consecutive terms of incarceration for crimes for which the elements are nearly identical. Specifically, the Defendant was sentenced for both possessing a stolen firearm and for being a person not to possess that same firearm. While the imposed sentence is a legal sentence, the punitive nature of the consecutive sentences as a whole is an abuse of discretion, particularly when the firearm was never found in the Defendant's actual possession.

## III.   Discussion

### 1. All of the charges against the Defendant were properly tried in Montgomery County.

Defendant's first claim is that the jury's inability to reach a verdict on Burglary and Theft By Unlawful taking while finding him guilty of Receiving Stolen Property based on the recovery of property from a Philadelphia address, somehow divested this Court of jurisdiction over these charges and rendered Montgomery County the inappropriate venue. This claim is wholly illogical and without merit and, therefore, must fail.

All courts of common pleas have subject matter *jurisdiction* over violations of the Crimes Code. See, Commonwealth v. Bethea, 828 A.2d 1066, 1074-75 (Pa. 2003). "Subject matter jurisdiction and venue are distinct. However, since jurisdiction references the power of a court to entertain and adjudicate a matter while venue pertains to the locality most convenient to the proper disposition of a matter, venue can only be proper where jurisdiction already exists." Id. (citation omitted). The terms are often loosely used

7

interchangeably because they must both exist for a court to exercise its power. Id. Clearly, as a Court of Common Pleas, this Court had jurisdiction over all of the charges against the Defendant.

Pursuant to the Rules of Criminal Procedure regarding venue, "[w]hen charges arising from the same criminal episode occur in more than one judicial district, the criminal proceeding on all the charges may be brought before one issuing authority in a magisterial district within any of the judicial districts in which the charges arising from the same criminal episode occurred." Pa. R. Crim. P. 130 (A)(3). As conceded by the Defendant, by letter of March 31, 2015, an Assistant District Attorney in the Philadelphia District Attorney's Office sent a letter to Montgomery County agreeing, pursuant to McPhail, 547 Pa. 519 and Pa. R. Crim. P. 130, to let Montgomery County assume jurisdiction over the charges of Theft by Receiving Stolen Property and Possession of a Firearm. The fact that the jury in the instant case hung on the charge of Burglary cannot somehow render the proper transfer of a case invalid. This court is aware of no authority, and the Defendant has cited none, that would support this proposition. Furthermore, at no time prior to his trial did the Defendant challenge the ability of Montgomery County to prosecute the charges related to the property recovered from his Philadelphia apartment. Therefore, because Philadelphia and Montgomery County entered into an agreement to prosecute all charges in Montgomery County, the venue and jurisdiction of this Court was proper and this claim is devoid of merit.

8

## 2. This Court did not err in denying the Defendant's Motion to Suppress.

The Defendant's next contention contains several challenges to this Court's denial of his motion to suppress evidence obtained as a result of the search warrants executed on his residences.[8] Specifically, the Defendant asserts that he was unlawfully detained; therefore, the search warrants that were subsequently obtained for his residences were improper and not supported by probable cause. Additionally, he asserts that the warrants were overbroad and that there was not an established nexus between the crimes and the properties to be searched. The Defendant also claims that the admission at trial of the evidence obtained through the challenged warrants was error. Counsel did not object when either the search warrants or the ring and firearm were admitted into evidence, therefore, he cannot raise this claim for the first time on appeal. (N.T. May 24, 2016 at 63, 65, and 186). The motion to suppress was properly denied, therefore, this claim must fail.

The standard of review for the denial of a suppression motion is well settled. The Pennsylvania Supreme Court has stated:

> In reviewing a trial court's suppression ruling, our initial task is to determine whether the factual findings are supported by the record. In making this determination, we must consider only the evidence of the prosecution's witnesses, and so much evidence of the defense that remains uncontradicted when fairly read in the context of the record as a whole. When the evidence supports the factual findings, we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous.

---

[8] The Court notes that nothing of evidentiary value was found as a result of the search of 5121 N. 10th Street.

9

Commonwealth v. Wituszynski, 784 A.2d 1284, 1285 (Pa. 2001)(citing Commonwealth v. Bridges, 757 A.2d 859, 868 (Pa. 2000) (quoting Commonwealth v. Williams, 650 A.2d 420, 425-26 (Pa. 1994)).

First, the Defendant was lawfully detained. It is well settled that there are three categories of police-citizen interactions.

> The first of these is a 'mere encounter' (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an 'investigative detention' must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or 'custodial detention' must be supported by probable cause.

Commonwealth v. Ranson, 103 A.3d 73, 76-77 (Pa. Super. 2014), reargument denied (Dec. 16, 2014), appeal denied, 117 A.3d 296 (Pa. 2015) (citations omitted). Furthermore,

> [a] police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

Id. at 77. (citations omitted).

Det. Sgt. Fink testified that while out on a burglary detail[9] Officer Bullock observed the Defendant, in a vehicle driven by Brian Bosket, drive slowly around high end neighborhoods at night. N.T. Feb. 29, 2016 at 32. When Officer Bullock ran the tag on the car, there was no record found. Id. Detective Sergeant Fink joined in surveillance and, twice, Fink observed the Defendant get out of the car and approach houses on Bonnie Lane; the Defendant returned to the vehicle both times. Id. at 39-46. At 2635 Bonnie Lane, Det. Sgt. Fink observed the Defendant "creeping" around the house and crouching to look in the window of the home. Id. at 45. Det. Sgt. Fink then followed the Buick to another residential street with high end homes, where, again, the Buick drove very slowly. Id. at 48.

Based on his training and experience, and his observations, Det. Sgt. Fink believed that the Defendant and his companion were casing homes in order to find a home to burglarize. Id. Therefore, "knowing that [he] observed loitering and prowling at nighttime and [he] believed they were attempting to break into homes," he ordered a traffic stop when the car began to leave the area. Id. at 51. The court found that, based on the totality of the circumstances, there was reasonable suspicion to stop the vehicle. Id. at 175. Once the vehicle was stopped, Det. Sgt. Fink observed, in plain view, a ladder matching the description of the ladder contained in the intelligence bulletin regarding the February 7, 2015 burglary at 1277 Burnett Road as well as what

---

[9] There was testimony that there were four burglaries prior to March 21, 2015, that law enforcement believed were related and resulted in the creation of a burglary detail. N.T. Feb. 29, 2016 at 18. However, the Defendant was only charged with one completed burglary.

11

he recognized as common tools used by burglars, specifically, multiple cell phones, gloves and screw drivers. Id. at 53-56. At this point, officers had probable cause to arrest the Defendant for loitering and prowling. Id. at 175-177.

Second, the warrants for the Defendant's residence were properly issued. It is well settled that probable cause for the issuance of a search warrant exists when the facts and circumstances set forth in the affidavit are sufficient to lead to a reasonable belief that evidence of a crime will be found as a result of the search to be authorized by the warrant. Furthermore, an "[a]ffidavit for a search warrant is to be tested by [the Superior Court] with common sense and a realistic manner, and not subjected to overly technical interpretations; the magistrate's determination of probable cause is to be accorded great deference on review." Commonwealth v. Vergotz, 616 A.2d 1379, 1382 (Pa. Super. 1992) (citations omitted).

The affidavits of probable cause clearly outline the training and experience of the investigating officer, Det. Sgt. Fink, including his knowledge regarding how burglaries are committed and what tools are used, what is commonly taken, and where stolen property is commonly found. The affidavits outline the criminal history of the Defendant. Additionally, the affidavits contain extensive detail regarding the investigation involving burglaries that occurred during this time period, as well as the facts outlined above that led to the instant charges. Finally, the affidavits outline that at the time of his arrest, the Defendant had a Pennsylvania Driver's License and a Parole Card with an

12

address of 5121 N. 10th Street, Philadelphia, PA. Further investigation revealed that Defendant was actively registered with the PA Department of Human Services at 7212 Haverford Avenue, Apartment B-4, Philadelphia, PA. Additionally, PENNDOT records indicated that the Defendant had a car registered in his name at that location. Therefore, there was sufficient probable cause to believe that the items searched for would be found in one of these residences.

Furthermore, the warrants for both 5121 N. 10th Street, Philadelphia, Pa. and 7212 Haverford Avenue, Apartment B-4, Philadelphia, Pa. are not overbroad and state specifically that the following items were to be searched for and seized: proof of residence, Beretta 9-mm semi-automatic handgun, serial number J24532Z, assorted jewelry such as earrings, bracelets, mens' watches, diamond, gold rings, etc. (CS-20; CS-30). As outlined above, *inter alia*, the handgun and a ring were recovered as a result of the search of Haverford Avenue. Based on the foregoing, the Defendant's motion to suppress was properly denied.

### 3. Sufficiency of the Evidence

Because the Defendant's motion to suppress was properly denied, the evidence was sufficient to support the Defendant's convictions for Receiving Stolen Property and Person not to Possess. The Defendant was also convicted of Receiving Stolen Property for the diamond ring that was stolen from 1277 Burnett Rd., however, he does not appear to be challenging his conviction on that count.

13

In reviewing the sufficiency of the evidence, we are required to view the evidence, and all permissible inferences to be drawn therefrom, in the light most favorable to the Commonwealth, as verdict winner. The test is whether, taking as true the evidence most favorable to the Commonwealth, together with all reasonable inferences therefrom, the evidence is sufficient to prove appellant's guilt beyond a reasonable doubt. Commonwealth v. Ruffin, 463 A.2d 1117, 1118-19 (Pa. Super. 1983) (citations omitted).

A person commits the crime of Theft by Receiving Stolen Property if, "he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen . . . As used in this section the word "receiving" means acquiring possession, control or title...." 18 Pa. C.S.A. § 3925. The Commonwealth was not required to prove actual possession of the stolen property. "In order to prove that a defendant had constructive possession of a prohibited item, the Commonwealth must establish that the defendant had both the ability to consciously exercise control over it as well as the intent to exercise such control." Commonwealth v. Harvard, 64 A.3d 690, 699 (Pa. Super. 2013) (quoting Commonwealth v. Gutierrez, 969 A.2d 584, 590 (Pa.Super.2009)). "'An intent to maintain a conscious dominion may be inferred from the totality of the circumstances, and circumstantial evidence may be used to establish a defendant's possession of drugs or contraband.'" Id.

Instantly, the totality of the circumstances indicated that the Defendant had constructive possession of the firearm. Mail, phone records, an expired

14

driver's license, and his girlfriend's testimony[10] all tied him to the location in which the stolen gun was found. In the bifurcated portion of his trial, following the jury's specific finding that the Defendant possessed the gun, the parties stipulated that the Defendant was a person not to possess, pursuant to 18 Pa. C.S.A. § 6105 (a), because of a prior conviction for burglary. N.T. May 27, 2016 at 46. Therefore, the evidence was sufficient to sustain his convictions for receiving stolen property and person not to possess.

## 4. Discretionary Aspect of Sentencing

The Defendant's final claim is a challenge to the discretionary aspects of his sentence. It is well settled under Pennsylvania law that,

> [s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Commonwealth v. Shugars, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted).

There is no absolute right to appeal the discretionary aspects of a sentence, rather a Defendant may petition for an allowance of appeal. 42 Pa. C.S.A. § 9781 (b). An allowance of appeal will only be granted by the Superior Court where a substantial question exists regarding the propriety of the sentence. Id. The existence of a substantial question is determined on a case by case basis. A substantial question exists "only when the appellant advances

[10] N.T. May 25, 2016 at 39-44, 51.

15

a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." Commonwealth v. Griffin, 65 A.3d 932, 935 (Pa. Super. 2013), appeal denied, 76 A.3d 538 (Pa. 2013) (citations omitted).

A court's imposition of consecutive sentences presents a substantial question in only "the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." Commonwealth v. Swope, 2015 PA Super 196, 123 A.3d 333, 338–39 (2015) (quoting Commonwealth v. Lamonda, 52 A.3d 365, 372 (Pa.Super.2012), appeal denied, 621 Pa. 677, 75 A.3d 1281 (2013)). A bald claim of excessiveness based on consecutive nature of a sentence does not raise a substantial question. Commonwealth v. Dodge, 77 A.3d 1263, 1270 (Pa.Super.2013), reargument denied (Nov. 21, 2013), appeal denied, 625 Pa. 648, 91 A.3d 161 (2014) ("Dodge III"). In order to preserve a claim challenging the discretionary aspects of a sentence, the Defendant must raise the issue in a post sentence motion. Commonwealth v. Lamonda, 52 A.3d 365, 370 (Pa. Super. 2012). The Defendant has preserved his claim; however, this Court submits that he has not raised a substantial question regarding the propriety of his sentence. Even if his challenge to the consecutive imposition of sentence

does raise a substantial question, the sentence is not "clearly unreasonable." [11] In light of the Defendant's extensive criminal history, the aggregate sentence of 9-20 years is wholly appropriate.

The Court considered the Defendant's extensive criminal history, including numerous crimes against the person, in fashioning a sentence that protected the community from the Defendant's recidivist behavior. N.T. Aug. 11, 2016 at 67-73. At no time during sentencing did the Defendant object to the guidelines or to his designation as a repeat felon. The Defendant was convicted of both possessing a firearm and being a person legally unable to possess said firearm. Both are serious offenses that pose a danger to the community. And the harms sought to be remedied by these statutes are different. The Defendant's consecutive, standard range sentences for the firearm related charges are not "clearly unreasonable" in light of his designation as a repeat felon. Additionally, the sentences for the additional charges of which the Defendant was convicted were ordered to run concurrent to the firearm related charges. Therefore, this Court did not abuse its discretion in fashioning the Defendant's sentence.

---

[11] "Appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds: the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa. C.S.A. § 9781(c)(2).

## IV. CONCLUSION

Based upon the foregoing, the Judgment of Sentence should be affirmed.

BY THE COURT:

_____

**STEVEN T. O'NEILL      J.**

Copies mailed on 4/19/17
to the following:

Robert Falin, Esq. (District Attorney's Office)
Bonnie-Ann Brill Keagy, Esq.

Secretary

18