J-S42009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAWAN D. EASON | : | |
| | : | |
| Appellant | : | No. 191 MDA 2024 |

Appeal from the Judgment of Sentence Entered May 24, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0002206-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAWAN D. EASON | : | |
| | : | |
| Appellant | : | No. 192 MDA 2024 |

Appeal from the Judgment of Sentence Entered May 24, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0002207-2020

BEFORE:  LAZARUS, P.J., BECK, J., and BENDER, P.J.E.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: JANUARY 29, 2025**

Jawan D. Eason appeals[1] *nunc pro tunc* from the judgments of sentence,

entered in the Court of Common Pleas of Cumberland County, following his

---

[1] On May 24, 2022, Eason was sentenced and, on June 3, 2022, in lieu of a direct appeal, Eason filed a *pro se* Post Conviction Relief Act (PCRA) petition pursuant to 42 Pa.C.S.A. §§ 9541-9546.  The trial court appointed counsel, who ultimately filed an amended PCRA petition seeking to reinstate Eason's
*(Footnote Continued Next Page)*

convictions at Docket Number CP-21-CR-0002206-2020 (No. 2206-2020) of

one count each of persons not to possess firearm,[2] tampering with evidence,[3]

_____

direct appeal rights *nunc pro tunc* because trial counsel had failed to perfect an appeal at Eason's request. On September 20, 2022, the trial court reinstated Eason's direct appeal rights *nunc pro tunc* and both the trial court and Eason have complied with Pa.R.A.P. 1925(b). However, this Court dismissed Eason's *nunc pro tunc* appeals for failure to file an appellate brief. Eason subsequently filed a second *pro se* PCRA petition again seeking the reinstatement of his appellate rights *nunc pro tunc* based on prior counsel's ineffectiveness, and the trial court appointed new PCRA counsel. Ultimately, the trial court granted Eason's second PCRA petition, reinstated Eason's direct appeal rights *nunc pro tunc* at both dockets, and appointed PCRA counsel as appellate counsel. **See** Order, 1/9/24, at 1.

Eason filed the instant counseled *nunc pro tunc* notices of appeal and this Court concluded that Eason's notices of appeal did not comply with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018). **See** Order, 4/4/24, at 1. This Court directed Eason, pursuant to **Commonwealth v. Young**, 280 A.3d 1049 (Pa. Super. 2022), to correct the **Walker** defects within 14 days. **See** Order, 4/4/24, at 1-2. Eason filed timely amended notices of appeal on April 15, 2024. On April 22, 2024, this Court consolidated Eason's appeals. **See** Order, 4/22/24, at 1.

Once again, Eason failed to file a timely appellate brief and, on June 26, 2024, this Court dismissed Eason's appeals. **See** Order, 6/26/24, at 1. On June 28, 2024, Eason filed an application to reinstate his appeals and the briefing schedule, wherein appellate counsel conceded that he had erroneously failed to file a brief and requested reinstatement in lieu of pursuing another PCRA. **See** Application to Reinstate Appeal, 6/28/24, at 1-4. On July 2, 2024, this Court granted Eason's application, reinstated his appeals at the above-captioned dockets, and directed Eason to file his appellate brief within 21 days. **See** Order, 7/2/24, at 1. On July 23, 2024, Eason filed his appellate brief, and these consolidated matters are now ripe for our review.

[2] 18 Pa.C.S.A. § 6105(a)(1).

[3] **Id.** at § 4910(1).

possession of controlled substance—cocaine,[4] possession of drug paraphernalia,[5] and possession of controlled substance—small amount of marijuana;[6] and at Docket Number CP-21-CR-0002207-2020 (No. 2207-2020) of two counts each of delivery—cocaine,[7] and criminal use of communication facility.[8] After careful review, we affirm.

In July of 2020, the Cumberland County Drug Task Force began an investigation into Eason and Tawana Carr, his paramour, for suspected drug activity. On July 6, 2020, a confidential informant (CI) called Eason on speakerphone while Detectives Anthony Fiore and Jason Paul listened. The CI asked to purchase eighty dollars' worth of crack cocaine. Eason agreed and directed the CI to meet him at the Sunoco gas station in Enola, Cumberland County (Sunoco delivery).

Prior to meeting with Eason, the detectives searched the CI for illegal drugs, money, and weapons. The detectives did not find any contraband on the CI's person or in their vehicle. The CI drove to the Sunoco and was followed by Detective Fiore in an unmarked vehicle. Detective Fiore maintained constant visual contact with the CI's vehicle while traveling to the

_____

[4] 35 P.S. § 780-113 (a)(16)

[5] *Id.* at § (a)(32).

[6] *Id.* at § (a)(31).

[7] *Id.* at § (a)(30).

[8] 18 Pa.C.S.A. § 7512.

Sunoco. While Detective Fiore followed the CI, Detectives Josh Dupler and Shelby Day arrived at the Sunoco and proceeded inside to observe the exchange. Upon arrival at the Sunoco, the CI parked in the Sunoco parking lot and Detective Fiore parked in an adjacent lot, from which he could see the exchange. Detective Fiore remained in his vehicle to observe.

Shortly after the CI and Detective Fiore arrived, a red Ford Expedition arrived at the Sunoco. Carr was driving the vehicle, Eason was the passenger, and several children were in the rear of the vehicle. Carr exited the Expedition and went inside the Sunoco, followed three minutes later by Eason and the CI.

Detective Day observed the CI provide Eason with the certified funds and, in turn, Eason handed cocaine to the CI. Shortly thereafter, the CI, Carr, and Eason exited the Sunoco. Detective Fiore observed Eason and Carr leave together in the same Expedition. Detective Fiore then followed the CI to a debriefing location, where the CI provided Detective Fiore with the crack cocaine. The CI's person and vehicle were searched again, and the detectives did not find any contraband.

On July 8, 2020, Detective Fiore set up a second controlled purchase of drugs from Eason and Carr (The Pizza Shop delivery). The CI's person and vehicle were searched before and after the operation, just as in the Sunoco delivery. The detectives did not find any contraband in either search. Also similar to the Sunoco delivery, the CI made a phone call to Eason, in which they requested one-hundred-dollars' worth of crack cocaine. Eason directed

the CI to meet at The Pizza Shop in Enola, Cumberland County. Detective Fiore followed the CI to The Pizza Shop, while other detectives proceeded to The Pizza Shop ahead of them to set up surveillance.

Upon arrival, the CI parked near The Pizza Shop entrance and Detective Fiore parked at the adjoining Minute Mart. Detective Fiore observed Eason already standing outside The Pizza Shop. The CI exited their vehicle and waited at the front of The Pizza Shop. Moments later, Carr arrived in the same red Ford Expedition observed in the Sunoco delivery. Carr exited the vehicle, walked over to Eason, and engaged in a conversation with him. Carr then walked over to the CI and both of them proceeded to enter and exit The Pizza Shop three times. The interaction between Carr and the CI lasted less than one minute.

Carr returned to the Expedition with Eason, and they left. The CI returned to their vehicle and drove, followed by Detective Fiore, to a debriefing location, where the CI provided Detective Fiore with crack cocaine.

On July 9, 2020, police executed a search warrant of Eason's residence in Cumberland County. Detectives searched Eason's bedroom and recovered: numerous baggies, some of which contained marijuana; digital scales; a box of R.P. brand 9mm Luger bullets containing 19 bullets; and a single 9mm Luger bullet in a nightstand. In the bathroom, detectives found what was suspected to be crack cocaine around the toilet area. In the living room, detectives located a firearm containing a magazine of 9mm Luger bullets at the bottom of an Arby's restaurant bag with food placed on top of it. In the

kitchen area, detectives found suspected marijuana, drug paraphernalia including a digital scale with cocaine residue, and various ammunition, including: a box of Winchester 9mm ammunition containing 24 40-caliber bullets; and an empty box of Smith and Wesson 40-caliber ammunition. Further, a loaded 9mm pistol magazine was located in the center console of Eason's vehicle.

During the search, Eason asked to speak with Detective Fiore privately. Detective Fiore read Eason his ***Miranda***[9] rights and Eason waived those rights to speak with Detective Fiore. Eason told Detective Fiore that he knew that there was a "legit" firearm in the residence, but that it belonged to his friend. Eason refused to provide his friend's name, and further admitted to transporting the firearm. Eason also admitted to flushing drugs down the toilet in his bathroom.

At some point, Carr joined Eason and Detective Fiore's conversation, and Carr and Eason attempted to bargain with each other about who should be charged with which offenses. Eason stated that he would "take all of the drug charges if [Detective Fiore] charg[ed] [Carr] with the gun." N.T. Jury Trial, 3/28/22, at 67.

Following the execution of the search warrant, Eason was taken into custody. During a search incident to arrest, police discovered $4,300.00 in

---

[9] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

Eason's right front pocket. As a result of the foregoing, Eason was charged with the above-mentioned offenses.

On September 15, 2021, Eason filed an omnibus pre-trial motion, which the trial court denied on September 28, 2021, as untimely. On March 28-30, 2022, Eason proceeded to a consolidated jury trial on both dockets, after which he was convicted of the above-mentioned offenses. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report.

On May 24, 2022, the trial court sentenced Eason to an aggregate term of six to twelve years' incarceration. In particular, the trial court sentenced Eason to six to twelve years' incarceration for his conviction of persons not to possess firearms at No. 2206-2020; one to two years' incarceration each for his convictions of tampering with evidence at No. 2206-2020 and both convictions of delivery—cocaine at No. 2207-2020; and, costs of prosecution at all of his remaining convictions. The trial court imposed all of Eason's convictions concurrently to each other.

As noted **supra**, Eason filed a *nunc pro tunc* notice of appeal and has complied with Pa.R.A.P. 1925(b). Eason now raises the following claims for our review:

> 1. Does the record contain sufficient evidence to sustain Eason's conviction for [] delivery [of] a controlled substance (cocaine)[]?
>
> 2. Does the record contain sufficient evidence to sustain Eason's conviction for prohibited possession of a firearm[]?

Brief for Appellant, at 4.

Eason's claims challenge the sufficiency of the evidence, for which we adhere to the following standard of review:

[W]hether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

In his first claim, Eason challenges his delivery conviction for The Pizza Shop Delivery at No. 2207-2020. *See* Brief for Appellant, at 13-14. Eason acknowledges that he spoke with the CI by telephone to arrange The Pizza Shop delivery but argues that Carr, not Eason, handed the drugs to the CI. *See id.* at 14. Eason contends that this delivery cannot extend to him because the Commonwealth did not charge him with conspiracy. *See id.* We disagree.

Subsection 780-113(a)(30) prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance by a

person not registered under this act[.]" 35 P.S. § 780-113(a)(30). "Delivery is . . . the actual, constructive, or attempted transfer [of a controlled substance] from one person to another[.]" ***Commonwealth v. Morrow***, 650 A.2d 907, 912 (Pa. Super. 1994) (quotations omitted). Thus, for a defendant to be liable as a principal for the delivery of a controlled substance, there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so. ***See Commonwealth v. Metzger***, 372 A.2d 20, 22 (Pa. Super. 1977) ("offensive conduct is simply actual, constructive[,] or attempted transfer from one person to another of the prohibited substance").

A defendant actually transfers drugs whenever he physically conveys drugs to another person. ***See Commonwealth v. Murphy***, 844 A.2d 1228, 1234 (Pa. 2004). A defendant constructively transfers drugs when he "**directs another person to convey drugs under his control to a third person or entity**." ***Id.*** (emphasis added).

Further, it is well-established that a defendant, who was not the principal in committing the delivery, may be liable for the crime if he was an accomplice of the principal. ***See Commonwealth v. Bradley***, 392 A.2d 688, 690 (Pa. 1978). The Crimes Code defines accomplice liability, in relevant part, as follows:

> **§ 306. Liability for conduct of another; complicity**
>
> **(a) General rule.--**A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable or both.

- 9 -

**(b) Conduct of another.--**A person is legally accountable for the conduct of another person when:

(1) acting with the kind of culpability that is sufficient for the commissions of the offense, he causes an innocent or irresponsible person to engage in such conduct;

(2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or

(3) he is an accomplice of such other person in the commission of the offense.

**(c) Accomplice defined.--**A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

**(d) Culpability of accomplice.--**When causing a particular result is an element of the offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

* * *

**(g) Prosecution of accomplice only.--**An accomplice may be convicted on proof of the commission of the offense and his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted[.]

18 Pa.C.S.A. §§ 306(a)-(d), (g).

Our Supreme Court has explained:

- 10 -

> In order to sustain a conviction on accomplice liability, the Commonwealth must demonstrate that an individual acted with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense. . . . [A] shared criminal intent between the principal and his accomplice may be inferred from a defendant's words or conduct or from the attendant circumstances.

*Le*, 208 A.3d at 969 (citations omitted). Interpreting subsection 306(c)(1), this Court has observed that "promoting" the commission of an offense means "contribut[ing] to [its] progress or growth," while "facilitating" means "mak[ing] the commission of a crime easier" or "mak[ing] it easier for another person to commit a crime." ***Commonwealth v. Kimbrough***, 872 A.2d 1244, 1252 (Pa. Super. 2005) (citation omitted).

"Accomplice liability requires **only aid**, **not an agreement**." ***Commonwealth v. Jordan***, 212 A.3d 91, 95 (Pa. Super. 2019) (citation omitted, emphasis added). "Accomplice liability can be established by circumstantial evidence." *Id.* (citation omitted).

> [A] defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime.

***Commonwealth v. Barnes***, 871 A.2d 812, 822 (Pa. Super. 2005) (citation omitted); ***see also Commonwealth v. Davalos***, 779 A.2d 1190, 1194 (Pa. Super. 2001) ("driver of a getaway vehicle can be found guilty as a co-

conspirator if it is reasonable to infer that he was aware of the actual perpetrator's intention").

Instantly, it is clear that Carr delivered the cocaine to the CI at The Pizza Shop delivery. *See* Trial Court Opinion, 3/20/24, at 1 (adopting March 14, 2023 order and opinion denying Eason's sufficiency arguments); Trial Court Opinion, 3/14/23, at 3-4. It is likewise clear that Eason spoke with the CI via telephone, agreed to sell them $100 worth of cocaine, arranged to meet the CI at The Pizza Shop, waited for the CI at the location, met with Carr immediately before the exchange, and left in the same vehicle as Carr. *See* Trial Court Opinion, 3/14/23, at 3-4. Moreover, Carr and Eason acted in concert at the Sunoco delivery. *See id.* Based upon our review of the foregoing, Eason was not "merely present" at The Pizza Shop delivery, but rather facilitated the sale and the delivery of the cocaine to the CI. Consequently, the Commonwealth presented sufficient evidence that Eason constructively delivered the cocaine to the CI through Carr. *See Murphy*, *supra*. Furthermore, we conclude that the Commonwealth's evidence also proves, under a theory of accomplice liability, that Eason acted as Carr's accomplice for The Pizza Shop delivery. Consequently, Eason's convictions are affirmed on this basis as well. *See Kimbrough*, *supra*; *Jordan*, *supra*. Accordingly, Eason is entitled to no relief. *See Smith*, *supra*.

In his second claim, Eason challenges the sufficiency of the evidence for his persons not to possess firearms conviction at No. 2206-2020. *See* Brief for Appellant, at 15-16. Eason argues that the firearm was not licensed to

him, but to "a friend, who was not present during the search." *Id.* at 16. Eason asserts that his mere knowledge of the firearm cannot sustain a conviction via constructive possession. *See id.* We disagree.

The Crimes Code defines persons not to possess, in relevant part, as follows:

> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of the sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer[,] or manufacture or obtain a license to possess, use, control, sell, transfer[,] or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

This Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Heidler*, 741 A.2d 213, 215 (Pa. Super. 1999). Where a defendant is not in actual possession of the prohibited item, the Commonwealth must establish that the defendant had constructive possession to support the conviction. *See Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013). "Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." *Id.* (citation and quotation omitted). "We have defined constructive possession as conscious dominion," meaning that the defendant has "the power to control the contraband and the intent to exercise that control." *Id.* (citation and quotation omitted). More than one person can constructively possess the same contraband. *See Commonwealth v. Sanes*, 955 A.2d 369, 373 (Pa.

- 13 -

Super. 2008). Additionally, constructive possession may be established by the totality of the circumstances. *See Hopkins*, 67 A.3d at 820.

Constructive possession may be proven by wholly circumstantial evidence. *See Commonwealth v. Haskins*, 677 A.2d 328, 330 (Pa. Super. 1996). In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue. *See Commonwealth v. Davis*, 743 A.2d 946, 953-54 (Pa. Super. 1999) (holding evidence sufficient to prove constructive possession over drugs found in apartment common areas where defendant entered apartment using his own key, possessed $800 in cash on his person, and police recovered defendant's ID badge, clothing, and firearms in bedroom).

Standing alone, mere presence at a place where contraband is found is insufficient to prove constructive possession. *See Commonwealth v. Valette*, 613 A.2d 548, 551 (Pa. 1992). Thus, the location and proximity of the defendant to the contraband alone is not conclusive of guilt. *See Commonwealth v. Juliano*, 490 A.2d 891, 893 (Pa. Super. 1985). "Rather, **knowledge of the existence and location of the contraband is a necessary prerequisite to proving defendant's intent to control**, and, thus, his constructive possession[.]" *Commonwealth v. Parrish*, 191 A.3d 31, 37 (Pa. Super. 2019) (emphasis added).

Instantly, at trial, Eason stipulated that he is a person not to possess a firearm under section 6105(b). *See* Trial Court Opinion, 3/14/23, at 4-5.

- 14 -

During Eason's discussion with Detective Fiore, Eason admitted that he knew exactly where the firearm was located. *See id.* Further, Eason told Detective Fiore that the firearm was "legit," that he was "holding it for a friend," and admitted to transporting that firearm. *See id.* After recovering the firearm, officers discovered that it was loaded and operable. *See id.* Additionally, throughout the residence and Eason's vehicle, police found multiple 9mm bullets, magazines, and ammunition boxes. *See id.* Thus, the Commonwealth presented sufficient evidence that Eason constructively possessed the firearm. *See Parrish*, *supra*. Moreover, Carr's presence does not compel a different result because more than one person can constructively possess the same contraband. *See Sanes*, *supra*.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/29/2025